FILED
JAMES J. WALDRON, CLERK

FEB 2 4 2010

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE:                                                   Chapter 7

NORVERGENCE, INC.,                                       Case No. 04-32079(RG)

      Debtor.

A-1 ADVANCED MOVING & STORAGE,
INC., et al.,                                            Adv. No. 04-2939(RG)

      Plaintiffs,

vs.

NORVERGENCE, INC. AND
CELTIC BANK CORP., et al.,

      Defendants.

AM JEWELERS, INC., et al.,

      Plaintiffs,                                      Adv. No. 04-2941(RG)

vs.

NORVERGENCE, INC. AND
DOLPHIN CAPITAL CORP., et al.,

      Defendants.

AAAA AT YOUR SERVICE, et al.,

      Plaintiffs,                                      Adv. No. 04-2942RG)

vs.

NORVERGENCE, INC. AND
NATIONAL CITY COMMERCIAL CAPITAL
CORPORATION d/b/a INFORMATION LEASING
CORP., et al.,

      Defendants.

B-COM GROUP, et al.,

       Plaintiffs,

vs.

NORVERGENCE, INC. AND
CREDENTIAL LEASING, et al.,

       Defendants.

Adv. No. 04-2944(RG)

---

BALMES FLOWER SHOP AND
GREENHOUSE, et al.,

       Plaintiffs,

vs.

NORVERGENCE, INC. AND
LIBERTY BANK, et al.,

       Defendants.

Adv. No. 04-2962(RG)

---

BUILDERS POST-TENSION, INC., et al.,

       Plaintiffs,

vs.

NORVERGENCE, INC. AND
PFG COMMERCIAL FINANCE, et al.,

       Defendants.

Adv. No. 04-2963(RG)

---

AMERICAN ENERGY SERVICES, INC., et al.,

       Plaintiffs,

vs.

NORVERGENCE, INC. AND
OFC/ALFA, et al.,

       Defendants.

Adv. No. 04-2966(RG)
Adv. No. 08-1616(RG)
(Consolidated)

DC & ASSOCIATES, P.A., et al.,

       Plaintiffs,

vs.

NORVERGENCE, INC., AND ALFA
FINANCIAL d/b/a OFC CAPITAL,

       Defendants.

1ST STEP FINANCIAL SERVICES, INC., et al.,

       Plaintiffs,

vs.

NORVERGENCE, INC. AND
STERLING NATIONAL BANK, et al.,

       Defendants.

Adv. No. 04-2971(RG)

-3-

ACCESSORIES OF TAMPA BAY/CRB,
INC., et al.,

       Plaintiffs,

vs.

NORVERGENCE, INC., PREFERRED CAPITAL,
INC., THE HUNTINGTON NATIONAL BANK,
AND UNITED MIDWEST SAVINGS BANK,

       Defendants.

Adv. No. 04-2974(RG)
Adv. No. 08-1615(RG)
  (Consolidated)

NATHA HOSPITALITY GROUP, L.P. d/b/a
SUPER 8 MOTEL, et al.,

       Plaintiffs,

vs.

NORVERGENCE, INC. AND
PREFERRED CAPITAL INC. AND UNITED
MIDWEST SAVINGS BANK, et al.,

       Defendants.

3D STREET MARKETING, INC., et al.,

       Plaintiffs,

vs.

NORVERGENCE, INC. AND POPULAR
LEASING USA, INC.,

       Defendants.

Adv. No. 04-2975(RG)

WHOLE HOUSE CABINET, INC., et al.,

           Adv. No. 08-1323(RG)

       Plaintiffs,

vs.

NORVERGENCE, INC. AND
INFORMATION LEASING CORPORATION
d/b/a NATIONAL CITY COMMERCIAL
CAPITAL CORPORATION, et al.,          **OPINION**

       Defendants.

_____

<u>APPEARANCES</u>

WEIR & PARTNERS, LLP
BY: MARC J. ZUCKER, ESQ.
SUSAN VERBONITZ, ESQ.
1339 Chestnut Street - Suite 500
Philadelphia, Pennsylvania 19107
***Attorney(s) for various Plaintiffs***

ROBERT D. GREENBAUM & ASSOCIATES
BY: ROBERT D. GREENBAUM, ESQ.
1339 Chestnut Street, Suite 530
Philadelphia, Pennsylvania 19106
***Attorney(s) for various Plaintiffs***

DEEB PETRAKIS BLUM & MURPHY, P.C.
BY: INEZ M. MARKOVICH, ESQ.
     LOUISE S. MELCHOR, ESQ.
10 Melrose Avenue, Suite 430
Cherry Hill, New Jersey 08003
***Attorney(s) for various Defendants***

BARBARA LANZA FARLEY, P.C.
BY: BARBARA LANZA FARLEY, ESQ.
13 Wilkins Avenue
Haddonfield, NJ 08033
***Attorney(s) for Credential Leasing Corporation***

NORRIS, MCLAUGHLIN & MARCUS, P.C.

BY: ROBERT L. SCHMIDT, ESQ.
721 Route 202-206
P.O. Box 1018
Bridgewater, New Jersey 08807
*Attorney(s) for Preferred Capital, Inc.*

NUDELMAN, NUDELMAN & ZIERING, P.C.
BY: GARY S. LEWIS, ESQ.
425 Eagle Rock Avenue
Roseland, New Jersey 07068
*Attorney(s) for The Huntington National Bank*

Rosemary Gambardella, Bankruptcy Judge

**MATTER BEFORE THE COURT**

In a number of related but separately commenced adversary proceedings, captioned as <u>A-1 Advanced Moving v. Norvergence, Inc. and Celtic Bank Corp., et al</u>, designated as Adv. Pro. No. 04-2939; <u>AM Jewelers, Inc. v. Norvergence, Inc. and Dolphin Capital Corp.</u>, Adv. Pro. No. 04-2941; <u>AAAA At Your Service v. Norvergence, Inc. and National City Commercial Capital Corporation d/b/a Information Leasing Corp.</u>, Adv. Pro. No. 04-2942; <u>B-Com Group, et al v. Norvergence, Inc. and Credential Leasing, et al</u>, Adv. Pro. No. 04-2944; <u>Balmes Flower Shop and Greenhouse v. Norvergence, Inc. and Liberty Bank, et al</u>, Adv. Pro. No. 04-2962; <u>Builders Post-Tension, Inc. v. Norvergence, Inc. and PFG Commercial Finance, et al</u>, Adv. Pro. No. 04-2963; <u>American Energy Services, Inc. v. Norvergence, Inc. and OFC/.ALFA. and DC Associates, P.A., et al v. Norvergence and Alfa Financial d/b/a OFC Capital, et al</u>, Adv. Pro. No. 04-2966, and <u>DC & Associates, P.A., et al v. Norvergence and Alfa Financial d/b/a OFC Capital, et al</u>, Adv. Pro. 08-1616 (consolidated); <u>1st Step Financial Services Inc., et al v. Norvergence, Inc. and Sterling National Bank, et al</u>, Adv. Pro. No. 04-2971; <u>Accessories of Tampa Bay/ CRB, Inc. v. Norvergence, Inc. and Preferred Capital, Inc., Huntington National Bank, United Midwest Savings Bank</u>, Adv. Pro. No. 04-2974, and <u>Natha Hospitality Group, L.P. d/b/a Super 8 Motel, et al v. Norvergence, Inc., Prefered Capital, Inc. And United Midwest Savings Bank</u>, Adv. Pro. 08-

1615 (consolidated), 3<u>rd</u> <u>Street Marketing, Inc. v. Norvergence, Inc. and Popular Leasing U.S.A.,</u>

<u>Inc.</u>, Adv. Pro. No. 04-2975 and <u>Whole House Cabinet, et al v. Norvergence, Inc. and</u>

<u>Information Leasing Corporation d/b/a National City Commercial Capital Corp., et al</u>, Adv. Pro.

No. 08-1323, the Defendants have each initiated a motion to dismiss the Second Amended

Complaints filed by the Plaintiffs in the respective cases.[1]  Generally, the Defendants invoke

Fed. R. Civ. P. 8, 9, and 12 (b)(6) as grounds for the dismissal of Count IV (Fraud Under the

New Jersey Consumer Fraud Act (NJCFA)) and Count V (Unconscionability Under the NJCFA).

In addition to Count IV and V's alleged failure to meet the "notice"and  "particularized fraud

pleading" standards, the Defendants also assert the NJCFA to be inapplicable to out of state

plaintiffs.

With regard to claims pursued by newly added Plaintiffs, the Defendants request

dismissal thereof on the grounds that the Plaintiffs never obtained permission pursuant to Fed. R.

Civ. P. 15 to include additional Plaintiffs.  Additionally, the Defendants also seek dismissal of

the claims of Plaintiffs with whom the Defendants have settled.

The Plaintiffs in the respective Adversary Proceedings filed papers in opposition and

during a June 2, 2009 hearing also verbally moved for Court permission to add the newly

amended plaintiffs to the cases at hand on a nunc pro tunc basis.  In response to Plaintiffs' verbal

motion, the Court decided to take the matter under advisement.

Before the Court is also a summary judgment motion brought by Defendant Credential

---

[1]As indicated above, the Adversary Proceedings concern similarly situated Plaintiffs who
pursue separate cases against the Defendants.  Most of the Plaintiffs in the Proceedings are
represented by Weir & Partners, LLP, while many of the Defendants have retained the law firm
of Deeb, Petrakis, Blum & Murphy, P.C.   As a consequence, the instant motions to dismiss the
Second Amended Complaint assert similar arguments in each affected Adversary Proceeding.  In
order to achieve an effective adjudication of the matter before the Court and for the sake of
simplicity, the Court will focus its analysis on the papers submitted in Adversary Proceeding
captioned <u>A-1 Advanced Moving & Storage, Inc. v. NorVergence, Inc. and Celtic Bank Corp., et</u>
<u>al</u>, Adv. Pro. No. 04-2939 and make this opinion applicable to the other separate but similarly
situated proceedings.  To the extent the filings in the remaining Adversary Proceedings raise
additional, different legal issues, these will be addressed in this opinion separately.  Also, the
operative complaints in certain of the Adversary Proceedings are "Amended Complaints".  The
term "Second Amended Complaint" as used in this Opinion shall refer to the last amended
complaint in each of the respective Adversary Proceedings.

Leasing, Inc. ("Credential") in Adversary Proceeding No. 04-2944, captioned as
<u>B-Com Group, LLC., et al v. Norvergence, Inc. and Credential Leasing, Inc.</u>  This motion is
based on the content of the Second Amended Complaint filed by Plaintiff B-Com Group LLC
("B-Com"), and Richard Lewin, a guarantor of certain B-Com financial obligations as well as by
DCC Corporation ("DCC") and Joseph Marshall, a guarantor of certain DCC financial
obligations.  Apart from advancing the same arguments as the other Movants, Credential also
asserts dismissal is proper due to the absence of any Equipment Rental Agreements ("ERA")
assignment documentation showing Credential took assignment of a NorVergence ERA.
Credential also asserts that the matter should be adjudicated in the courts of Pennsylvania due to
the terms of a floating forum selection clause in the ERA contract.  Plaintiffs have opposed
Credential's motion.

     In Adv. Pro. Case 04-2974, captioned <u>Accessories of Tampa Bay/ CRB, Inc., et al v.</u>
<u>NorVergence, Inc., Preferred Capital Inc., The Huntington National Bank and United Midwest</u>
<u>Savings Bank</u>, Defendants have also raised the issue of Preferred Capital, Inc.("PCI")'s Ohio
receivership as a grounds for mandatory dismissal of the Second Amended Complaint.

     In addition, with respect to Count VII, entitled "Debts or Obligations Fraudulently
Contracted or Incurred Pursuant to N.J.S.A. 2A:32-1," Defendants argue that it fails to meet the
requirements of Rule 9(b) and must therefore be dismissed..  The Plaintiffs refer to defenses
related to the Uniform Commercial Code ("UCC") and the Holder in Due Course status.
Because the issue has not been briefed  in detail, the Court will not address the merits of these
defenses in this Opinion.

     In Adv. Pro. Case 04-2974, United Midwest Savings Bank also seeks dismissal of Count
VI of the Second Amended Complaint for Unjust Enrichment, asserting that Plaintiffs have
failed to meet the Rule 8(a) pleading requirements.  Defendant alleges that the Second Amended
Complaint alleges only that United Midwest Savings Bank took assignments of the ERAs,
enforced payments thereunder and had knowledge or should have had knowledge of the alleged
unconscionable nature of the ERAs and payment practices of Norvergence but does not aver
specific facts as to the actions of Defendant.  At oral argument counsel for Defendants noted that
United Midwest Savings Bank purchased its ERAs from PCI, as did Defendant Huntington
National Bank ("HNB"), so it is twice removed from Norvergence and as a good faith purchaser

for value, should not be subject to an unjust enrichment claim. Tr. of June 2, 2009 at 48.

The Court entertained oral arguments on the pending motions on June 2, 2009.  The following constitutes this Court's findings of fact and conclusions of law.


## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*A) The Business of NorVergence and the Bankruptcy*

NorVergence, Inc. (referenced herein as "Debtor" or "NorVergence"), a re-seller of telecommunications equipment and services, allegedly induced customers to enter into two separate agreements (the "Matrix Leases") with NorVergence in connection with the purchase of telecommunication services.  One agreement governed the provision of services, the other contract concerned an ERA, pursuant to which the customer leased the Matrix Box that purportedly facilitated the provision of discounted telecommunications services by Debtor. These agreements required customers to lock themselves in for a five year term even though NorVergence had no long term agreements with carriers to support a five year commitment.

While continuing to recruit clients , Debtor also entered into various Master Program Agreements ("MPA") with the Leasing Company Defendants.  These contracts provided for the sale and/or assignment of the ERAs to the Defendants.

In sum, Debtor's business model consisted of enticing clients to sign five year long Matrix Leases for the rental of telecommunication leases and equipment.  Upon the execution of these Leases by its customers, Debtor immediately resold or assigned the Matrix Lease to the Defendants for cash directly based on a discount of the expected customer payments due under the ERA.

Some time in 2003 or 2004, Debtor's business began to experience major problems. Since its inception, NorVergence had been selling its telecommunication services at a loss. Ultimately, Debtor defaulted on its obligation to provide telecommunication services to its customers.  Due to the sale or assignment of the Matrix Leases to the Defendants and because the Lease Contracts did not make their legal effect contingent upon Debtor's provision of these services, the NorVergence customers remained liable for their installment payments due under

the Leases.

  An involuntary Chapter 11 bankruptcy petition was filed against the Debtor by under the United States Bankruptcy Code on June 30, 2004 by petitioning creditors, Popular Leasing, U.S.A. Inc., OFC Capital, a Division of ALFA Financial Corporation and Partners Equity Capital Company, LLC (PECC).  At a hearing held on July 14, 2004, the Debtor consented to the entry of an order for relief under Chapter 11 and for the immediate conversion of the case to a Chapter 7 liquidation proceeding.  The Office of the United States Trustee appointed Charles M. Forman to serve as Trustee for Debtor's Chapter 7 Estate on that same date.

## B) The Instant Adversary Proceedings

  In spite of Debtor's discontinuance of delivering telecommunications services to its clients, the Leasing Company Defendants began to enforce the Leases they acquired from Debtor and compelled the NorVergence clientele to remit their installment payments.  In September of 2004, the law firm of Weir & Partner, LLP. ("W&P") filed a law suit on behalf of a number of NorVergence customers against Debtor and numerous Leasing Company Defendants, including certain Defendants targeted by the pending Adversary Proceedings, in the Superior Court of New Jersey, Essex County vicinage.  In the state court complaint, the plaintiffs sought declaratory relief and monetary relief against certain of the Leasing Company Defendants who were purportedly the assignees of the Leases and participants in an alleged Ponzi Scheme orchestrated by Debtor.[2]  Plaintiffs' request for temporary restraints against the Defendants was denied by the state court on or about January 4, 2005.  The plaintiffs then resorted to the United District Court for the District of New Jersey in order to obtain injunctive relief.  Subsequently thereafter, the federal court remanded the action to the state court.

  In addition to these actions, W&P commenced the approximately 36 separate Adversary Proceedings on behalf of numerous Plaintiffs in this Court between November 16, 2004 and

---

[2]It is alleged that Debtor's business model constitutes a Ponzi Scheme whereby Debtor used some of the cash it acquired from the prior sale of ERA's to Defendants to fund its ever-growing costs of providing telecommunication services.  Ultimately, Debtor could not sell enough Leases to the Leasing Company Defendants to meet the ever increasing demands for payment from Debtor's telecommunications venders.

November 22, 2004.  These law suits were filed against the same Leasing Company Defendants already named in the state court action.  Debtor is also named a Defendant in each of the Adversary Proceedings.  On or about November 16, 2004, Plaintiffs filed the original Adversary Complaint, followed by an Amended Complaint on or about November 23, 2004.  The Adversary Complaints seek relief with respect to the Defendants based on the alleged "Ponzi Scheme."  Although directed against different Defendants, the Adversary Complaints are substantially identical.

With respect to the Amended Complaint, Count I sought declaratory relief in the form of an order declaring the ERA Leases to be void from inception and rescinded with an award of damages, legal fees and other relief.  Count II sought declaratory relief based on the New Jersey Uniform Commercial Code.  Count III asserted a Conversion claim against the Defendants.  The Amended Complaint also contained a Counts for "Violations of New Jersey Consumer Fraud Act"(Count IV), a Racketeer Influenced Corrupt Organizations Act ("RICO") claim pursuant to 18 U.S.C. § 1961 et seq. (Count V), and an Unjust Enrichment claim (Count VI).  Finally, the Complaint contained Counts for Debts or Obligations Fraudulently Contracted or Incurred Pursuant to N.J.S.A. 2A: 32-1(Count VII), for the disallowance of the Defendants' Recourse Claims against Debtor pursuant to 11 U.S.C. § 502(b)(1) (Count VIII), for equitable subordination pursuant to 11 U.S.C. §510© (Count IX) and for the allowance of unsecured claims against Norvergence's Estate pursuant to § 501 and § 502 of the Bankruptcy Code (Count X).

In response to the filing of the Complaints, Defendants initiated Motions to Dismiss the Amended Complaints in all of the Adversary Proceedings.  Immediately thereafter, Amended Motions to Dismiss the Amended Complaints followed.  On March 29, 2005, this Court entered an Order (the "March 29, 2005 Order") permitting the addition of new Plaintiffs, within the earlier of 45 days from the date of the March 29, 2005 Order or the date of entry of a scheduling order in the Related Adversary Proceedings.  On or about June 3, 2005, the Court heard arguments on the respective motions to dismiss.  Thereafter, on June 29, 2006, the Court delivered its Opinion on the Defendants' motions to dismiss, and on August 14, 2007 issued an Order in accordance with the Opinion (the "2007 Order").

The 2007 Order, among other things, granted the motions to dismiss regarding the claims

-11-

involving the NJCFA, finding that the Plaintiffs failed to plead fraud with specificity pursuant to Fed. R. Civ. P. 9(b) and permitted the Plaintiffs leave to file amended claims under the NJCFA. In addition, the Court also dismissed Count V of the complaints for violation of RICO, 18 U.S.C. § 1961 et seq.,  as the plaintiffs had failed to plead fraud in accordance with Rule 9(b).  In both instances, the Court permitted the Plaintiffs to file amended claims within 45 days of the 2007 Order's entry.

On or about September 27, 2007, Plaintiffs filed Amended Complaints and/or Second Amended Complaints in the Adversary Proceedings.  The Second Amended Complaints closely resemble the Amended Complaints.  A significant difference between the two Complaints is the deletion of the RICO cause of action (Count V) in the latest Complaints. The NJCFA based cause of action comprises now both Count IV "Fraud under the NJCFA" and Count V, entitled "Unconscionability under the NJCFA."  Counts I through III and Counts VI through X, Defendants urge, are almost identical to the corresponding Counts found in the Amended Complaint.   In addition, Defendants assert the factual averments set forth at paragraphs 1 through 108 of the Second Amended Complaint are almost verbatim repetitions of the factual averments contained in paragraphs 1 through 108 in the Amended Complaint.

The Second Amended Complaints also contain the addition of new Plaintiffs.  These additions occur some two and a half years after the March 29, 2005 Order.

Almost two months after the filing of the Second Amended Complaint, on November 30, 2007, the Plaintiffs moved for an entry of Default against Debtor/ Defendant NorVergence, Inc. in the various Adversary Proceedings.  On or about January 4, 2008, the Court entered Orders declaring NorVergence in Default.

## C) Defendant Preferred Capital, Inc.'s Receivership and the Court's Jurisdiction

The general background and history of the Adversary Proceedings also reflects the developments in the Adversary Proceeding captioned "Accessories of Tampa Bay/ CRB, Inc. v. NorVergence, Inc., Preferred Capital, Inc., the Huntington National Bank, and United Midwest Savings Bank.  In one important aspect, this matter differs from the other cases in that PCI was

placed in a receivership by the Ohio State court on April 14, 2005,[3] a few months after the start of the Adversary Proceeding involving PCI and the other Defendants. According to the Defendants, the PCI receivership requires Plaintiff to obtain permission from the Ohio Court in order to commence and pursue the instant Adversary Proceeding as the outcome may impact the assets in the possession of and within the exclusive jurisdiction of the Ohio court. Due to Plaintiff's failure to obtain the Ohio court's consent to the current litigation, it is argued that this Court does not possess jurisdiction to hear Plaintiff's case. The Court will address the significance of the PCI receivership separately within this opinion.

D) *Defendant Credential's Challenge to the Court's jurisdiction*.

Defendant Credential's summary judgment motion is partly based on an alleged inability of Plaintiff to document the purchase of a NorVergence Equipment Lease Agreement (also "ERA") from Primary Financial Corp. by Credential as well as on the ERA's forum selection clause, as contained in a the ERA executed between NorVergence, the vendors, B-Com and DCC, its clients, and Primary Financial Corp., the lessor. See Pl. Opp., Richard Lewin & Joseph H. Marshall Certifications, Affidavit of Andrew Schwab, Ex. B. The forum selection clause of the ERA provides, in relevant part-

> The validity, interpretation, enforcement and effect of this Lease and all related transactions shall be subject to an governed by the laws of the Commonwealth of Pennsylvania. Lessee consents to, and agrees that personal jurisdiction over it and subject matter jurisdiction over the Equipment shall be proper in, the Court of Common Pleas of and for Montgomery County, Pennsylvania and/or the United States District Court of the Eastern District of Pennsylvania, at Lessor's sole option.

> Pl. Opp., Exhibit B, ¶23.

Credential asserts that the provisions of this clause deprive the Court of the necessary jurisdiction to entertain B-Com's case. Credential's summary judgment petition will be

---

[3]The receivership case is captioned Champaign National Bank v. Preferred Capital, Inc., pending in the Court of Common Pleas, Summit County, Ohio, under docket no. CV-2005-03-1651.

evaluated separately herein.

E) The June 2, 2009 Hearing.

On June 2, 2009, the Court held conducted a hearing regarding Defendants' motions to dismiss the various Second Amended Complaints and Credential's summary judgment motion. In sum, the Defendants argued R. 9(b) is applicable to both Count IV, V and VII.  Here, Plaintiffs have not alleged specific acts of wrongdoing on the part of each Defendant and how Defendants participated in NorVergence's fraud.  By merely taking some ERA's through an assignment, the Defendants do not incur liability for NorVergence's wrongdoing.   Thus, the Defendants argued that the requirements of Rule 9(b) have not been met and Plaintiffs have not alleged facts satisfying the <u>Twombly</u> plausibility standard. According to the Defendants, the NJCFA is inapplicable here because Plaintiffs have not established that New Jersey law is the correct law to apply in the present case.

Defendant PCI also asserted that the Plaintiffs in Adv. Pro. 04-2974 must obtain permission from the Court in Ohio in order to pursue a case against it due to its Ohio receivership.

In response, Plaintiffs contended that Defendants mischaracterized the legal theory behind Counts IV, V, and VII..  Plaintiffs argue that Count IV (Fraud under the NJCFA) and Count VII (Debts or Obligations Fraudulently Contracted or Incurred Pursuant to N.J.S.A. 2A: 32-1) are attempting to hold Defendant liable for NorVergence's fraud by way of Defendants having acquired ERAs through assignments.  Plaintiffs contend that by accepting assignments, Defendants stepped into the shoes of NorVergence and cannot enforce a ERAs that are void ab initio as a result of fraud in the procurement thereof.  Count V involves an unconscionability claim under the NJCFA.  Plaintiffs argue that because Count V does not specifically allege fraud, Rule 9(b) is not the appropriate standard by which to evaluate this part of the Complaint. Plaintiffs as well argue that the allegations of fraud contained in the Amended Complaints are plead with sufficient specificity.  Plaintiffs argue that the pleadings found in Count IV, V and VII meet the requirements of <u>Twombly</u> and must therefore be permitted to stand.

Plaintiffs further urge that the forum selection/ choice of law clause of the ERA is invalid.  In particular, the floating forum selection clause violates New Jersey law as it fails to

-14-

provide proper notice of what forums might be excluded.  Plaintiffs also argue that New Jersey is the state of NorVergence's incorporation, the state where the wrongful conduct occurred and the state with the closest relationship to the transaction and parties.   During the hearing, Plaintiffs' Counsel verbally initiated a motion for permission to add additional plaintiffs to certain adversary proceedings on a Nunc Pro Tunc basis.  This motion will also be addressed in this opinion.

Plaintiffs also disagreed with Defendant PCI that permission form the Ohio state court is needed.  Plaintiffs contend that this proceeding before the Court does not involve control of assets and that only in the event of a judgment in favor of Plaintiffs are the Plaintiffs required to petition the Ohio court.

The June 2, 2009 hearing also dealt with Credential's summary judgment motion. Defendant Credential argued that it only acquired two leases, but these ERAs were acquired from Primary Financial Corp. ("Primary").  The assignment documents carry Primary's name. NorVergence is not listed anywhere as a party to the assignment.  Because there are no papers evidencing an assignment of a NorVergence ERA taken by Credential, the Second Amended Complaint cannot stand.  Any litigation surrounding the assignment of ERAs is governed by a forum selection clause in the Primary ERA.  The forum selection clause places jurisdiction to adjudicate the matters in Pennsylvania.  Consequently, it is Credential's position that this Court does not possess the jurisdiction to entertain this Adversary Proceeding.

Plaintiffs point to the Marshall and Lewin affidavits as evidence that Credential and NorVergence are connected, albeit indirectly, through an assignment of NorVergence ERA's. Discovery must be conducted to find out what assignments, if any, were transacted between the parties.  According to the Plaintiffs, the forum selection clause applies only to disputes regarding the telecommunications equipment.  Disputes about assignments and enforcement of an ERA are not affected by the clause and can be heard by this Court.  The Plaintiffs' argument goes on to conclude that since meetings between the parties and the fraud occurred in New Jersey, the Defendant is a New Jersey corporation, New Jersey is the state with a substantial relationship to this action the New Jersey courts possess jurisdiction and the state's law must apply.

I) Motions to Dismiss Counts IV,  V and VII

A) Perspectives of the Parties regarding Count IV and V

1) Celtic Bank and other Defendants

a) Plaintiffs fail to plead their allegations of violations of the NJCFA with particularity and therefore, according to Defendant, Counts IV and V must be dismissed pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) for failure to state a claim under the NJCFA.  See *Brief In Support Of Celtic Bank, Pursuant to Fed. R. Civ. P. 12 And Fed. R. Bankr. P. 7012, Seeking Dismissal Of All Claims In The Second Amended Complaint Filed By All Plaintiffs Who Previously Settled Their Claims With Celtic Bank and Released Celtic Bank From All Claims Related Thereto; And Seeking Dismissal Of All Claims Of Newly, Improperly Added Plaintiffs; And Seeking Dismissal of Counts IV And V Of The Second Amended Complaint* ("Celtic Br.") at 6.  Claims under the NJCFA are subject to the heightened pleading standards of Rule 9(b).  See Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 512 (D.N.J. 1999); see also Zebersky v. Bed, Bath & Beyond, Inc., No. 06-CV-1735, 2006 U.S. Dist. LEXIS 86451 at *12-13 (D.N.J. Nov. 28, 2006).  In the instant case, both Counts IV and V sound in fraud.  Count IV is entitled, "Fraud under the New Jersey Consumer Fraud Act."  Furthermore, the individual averments therein clearly attempt to allege fraudulent action.  Plaintiffs allege, among other allegations of fraud, that NorVergence "falsely promoted the use of the Matrix Devices;" NorVergence "deceitfully and fraudulently induced Plaintiffs to contract."  As such, the R. 9(b) pleading requirements undoubtedly apply to Count IV of the Second Amended Complaint. Celtic Br. at 8.

Count V sounds in fraud as well.  Count V attempts to allege that NorVergence and Celtic engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise, and misrepresentation.  Specifically, Plaintiffs claim that NorVergence misrepresented, made false promises, and acted fraudulently concerning the quality, capability, and value of the Matrix Box, the telecommunications services provided by NorVergence.  Plaintiffs also accuse NorVergence of having engaged in unconscionable practices.  Because the allegations in Count V sound in fraud, the Rule 9(b) pleading requirements apply to Count V. Id. at 9.

Plaintiffs have failed to identify any act by Celtic or other Defendants that would be

unconscionable, deceptive, or fraudulent such that it would violate the NJCFA.  Nor have they

identified any instance of Defendants violating the NJCFA by making a false pretension, a false

promise, a misrepresentation, or a knowing concealment, suppression or omission of material

fact.   Instead, Plaintiffs wrongfully attempt to make Defendants liable for NorVergence's

allegedly unconscionable and fraudulent acts, ignoring the fact that Defendants played no part in

the alleged "scheme" other than to take assignment of equipment leases advertised, sold, and

originated by NorVergence.  Id. at 10.

      Plaintiffs do not provide specificity with regard to the alleged experiences, transactions,

and interactions of the individually named Plaintiffs.  Counts IV and V and the Second Amended

Complaint in its entirety, lump all of the Plaintiffs in one group in a fashion akin to a class

action.  Similarly, the Plaintiffs do not distinguish between NorVergence, Celtic and the other

Leasing Companies.  "There are thirty seven (37) Plaintiffs in this Adversary Proceeding and six

hundred and ninety five (695) Plaintiffs in all of the Related Adversary Proceedings.  It is

incomprehensible that each of the Leasing Companies behaved identically with respect to each

of the varied Plaintiffs."  Id. at 13-14.  As a result, the allegations as against Defendants

throughout the Second Amended Complaint are merely conclusory statements that lack the

particularity required by R. 9(b).  Id., pp.10, 12, 14.

      With respect to the documentation Plaintiffs attached to the Second Amended Complaint.

Plaintiffs have merely attached a "sample" blank ERA.  In fact, the exhibits to the Second

Amended Complaint are the exact same exhibits as were attached to the First Amended

Complaint.  The same exhibits this Court found to be insufficient for the purpose of providing

the requisite factual specificity.  Defendants are entitled to know at the outset of this litigation

what conduct on its part have given rise to the fraud allegations.  This requirement is specific as

to each Defendant and to each individual Plaintiff.  This Adversary Proceeding is not a putative

class action.  Accordingly, every Plaintiff must be able to satisfy its burden to survive

Defendants' motions.  Id. at 16.

      Apart from failing to comply with the requirements of R. 9(b), the Plaintiffs also do not

plead their case in accordance with R. 8(a).  Alternatively, in the event the Court were to find R.

9(b) to be inapplicable to Counts IV and V, the two Counts must nevertheless be dismissed

based on R. 8(a).  Rule 8(a) requires that a claim for relief contain a short and plain statement

showing that the pleader is entitled to relief.  Pursuant to Rule 8(a), pleadings must give notice to

the defendant and must set forth the grounds upon which a plaintiff's claims rest.  Nix v. Welch

& White, P.A., 55 Fed. Appx. 71, 72 (3d Cir. 2003) (citing Swierkiewicz v. Sorema, N.A., 534

U.S. 506, 514 (2002).

According to Celtic, although Plaintiffs allege a number of actions and inactions taken by

NorVergence, the only averments made by Plaintiffs against Celtic are that Celtic took

assignments of the ERAs, enforced payment thereunder, and had knowledge or should have had

knowledge of the alleged unconscionable nature of the ERAs and practices of NorVergence. To

the extent the Second Amended Complaint contains any factual allegations, such allegations are

made not with respect to Celtic but rather NorVergence.  Out of the nineteen (19) paragraphs and

subparagraphs in Count IV and the thirty-five (35) paragraphs ans subparagraphs in Count V,

only four (4) apply to Celtic.

Moreover, the allegations supposedly directed to Celtic are identical to the allegations

directed to the other Leasing Corps companies in the Related Adversary Proceedings.  There are no

allegations which provide specifics as to what Celtic's actual actions or omissions were

compared to the other Leasing Companies.  Plaintiffs cannot be permitted to lump all of the

Leasing Company Defendants together as if each one of them had the same knowledge, engaged

in the same behavior, and is party to identical agreements.  Celtic, it claims, has a right under

Rule 8(a), to be on notice of the grounds upon which a Plaintiff's claim rests, notice of the

transactions, and notice of the material points necessary to sustain recovery.  Counts IV and V

fail to provide said notice.

In addition to their  violations of Rule 8(a) and 9(b), Plaintiffs improperly assert a

violation of the NJCFA with respect to all of the Plaintiffs as each Plaintiff resides outside the

State of New Jersey.  The NJCFA clearly does not apply to protect these alleged consumers from

other states.  Rather, the state law of each alleged consumer would apply in its place, as each

state has an overriding interest in protecting its own citizens from alleged fraud. Celtic Br. at 20

(citing Chin v. Chrysler Corp., 182 F.R.D. 448, 457 (D.N.J. 1998); Fink v. Ricoh Corp., 832

A.2d 942, 988 (N.J. Super. Ct. Law Div. 2003).   "Each Plaintiff's home state has an interest in

protecting its consumers from in-state injuries caused by foreign corporations and in delineating

the scope of recovery for its citizens under its own laws." Chin, 182 F.R.D. at 457.  "These

-18-

interests arise by virtue of each state being the place where the Plaintiffs reside, or the place where the Plaintiffs brought and used their allegedly defective [goods] or the place where Plaintiffs' alleged damages occurred." Id.

The differences inherent in each state's consumer fraud statute are far from trivial, according to Celtic. Whereas New Jersey's statute permits private consumer fraud actions where the goods were purchased for commercial or business use, other states differ. New Jersey is one of only two states that permit a trial by jury in private consumer fraud actions. Fink, 832 A. 2d at 976. These and other differences between New Jersey law and that of other states makes important the decision whether the NJCFA can be utilized by foreign Plaintiffs as a cause of action.

The Second Amended Complaint fails to allege facts sufficient to give New Jersey a greater interest than that the out-of-state Plaintiffs' own states. The only connection to New Jersey alleged by Plaintiffs is that NorVergence maintained its principal place of business in New Jersey. There are no allegations that any of the Plaintiffs reside in New Jersey, that any of the Plaintiffs purchased or used NorVergence services or products in New Jersey, or that any damages were sustained in New Jersey. Furthermore, there are no allegations that Celtic has any connection to New Jersey, other than its purchase of ERAs originated by NorVergence. In fact, Celtic is located in Utah. Celtic Br. at 22.

Thus, with respect to the Plaintiffs in this Adversary Proceeding who are all residents of states other than New Jersey, the NJCFA Counts are inapplicable and must be dismissed because the out-of-state Plaintiffs are bound by their own state's consumer fraud statute. Id.

Another issue requiring the Court's attention involves the claims of all newly added Plaintiffs. The claims of Plaintiffs, there specifically, M & J Carpets and Andres Torres, must be dismissed with prejudice as improperly filed. Under Rule 15, made applicable to the instant Adversary Proceeding by Fed. R. Bankr. P. 7015, a party may amend its pleading once as a matter of course at any time before a responsive pleading is served. If a response pleading is filed, or the pleading was once amended, a party may amend its pleading only by leave of court or by the written consent of the adverse party. See Commodity Futures Trading Commission v. American Mental Exchange Cort., 693 F. Supp. 168, 189 (D.N.J. 1988). In this Adversary Proceeding, Plaintiffs have already amended the Original Complaint as of course. The March

-19-

29, 2005 Order granted Plaintiffs permission to amend their claims in order to add or remove additional parties within 45 days of the date of its entry.  The deadline set for the in Order have now since passed.  This Court has not granted, and Plaintiffs have not requested, leave to amend the First Amended Complaint to add new parties since the 2005 Order.   As a result, Plaintiffs' addition of new parties to the First Amended Complaint is improper and the claims of these newly, improperly added Plaintiffs must be dismissed with prejudice.  Celtic Br. at 23-24.

Defendant Celtic also requests this Court to dismiss the claims of all Plaintiffs who have already settled their claims with Celtic and executed a release from liability in favor of the Defendant.[4]  The claims of the settled Plaintiffs in this Adversary Proceeding are no longer entitled to any relief under the Second Amended Complaint as is evidenced by the executed settlement agreements.  Id. at 24.


    2)A-1 Advanced Moving & Storage, Inc., et al. and other Plaintiffs
Plaintiffs take the position that New Jersey law governs Plaintiffs' state law claims regardless of the residence of each Plaintiffs.  See *Plaintiffs' Brief In Opposition To Defendant Celtic Bank's Motion To Dismiss Counts IV And V Of The Second Amended Complaint* ("Pl. Br.") at 6.  Nothing in the NJCFA limits its reach to New Jersey Plaintiffs.  Moreover, the New Jersey and federal courts have not hesitated to apply the NJCFA to non-New Jersey consumers where, as here, the transaction originated with a New Jersey provider, or otherwise had a nexus to New Jersey.  See  Boyes v. Greenwich Boat Works, Inc., 27 F. Supp. 2d 543, 547 (D.N.J. 1998); see also Kugler v. Haitian Tours, Inc., 120 N.J. Super. 260, 269, 293 A 2d 706 (Ch.Div. 1972).

Here, NorVergence was headquartered in New Jersey, the fixed portion of the choice of law clause called for the application of New Jersey law, the vast majority of assignees [including Defendant] contracted directly with a New Jersey company, Norvergence, and do business here, three of the Defendant assignees (Popular, OFC/ ALFA and PECC) chose to seek protection in

---

[4]A list of Plaintiffs who have settled their claims with Celtic is attached to the Markovich Certification in support of the instant motion to dismiss the Second Amended Complaint as Exhibit E.

New Jersey by filing the instant involuntary bankruptcy and the Defendant filed a proof of claim here. Also, certain of the Plaintiffs do reside or are headquartered in New Jersey. All of these factors militate in favor of the application of New Jersey law. Pl. Br. at 7.

Plaintiffs also point to a prior ruling of this Court on the issue of whether non-New Jersey Plaintiffs could invoke the NJCFA. At least one of the assignees raised the issue in the first round of the motions to dismiss. The Court did not adopt any portion of Defendant's argument. Id. at 10. Indeed, the Court's ruling addressed at length the issue of whether fraud had been pled adequately in the Complaints- an issue which would have been moot if the Court had concluded that Plaintiffs, the vast majority of whom do not reside in New Jersey, had no standing to seek relief under the NJCFA. Id.

With regard to the pleadings of Count IV and V, as an initial matter, the Plaintiffs claim the standard for pleading fraud in a complex, multi-party case such as the one at hand, is more relaxed. See, e.g., Kronfeld v. First Jersey National Bank., 638 F. Supp. 1454, 1465 (D.N.J. 1986); In re Prudential Ins. Co. of American Sales Practices Litigation, 975 F. Supp. 584, 596-97 (D.N.J. 1996) ("[L]ess specificity is required when the complaint presents the claims of a class and individual identification of the circumstances of the fraud as to each class member would require voluminous pleadings"). Rule 9(b) has also been "relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir. 1997).

In the present case, the allegations of fraud relate to the actions of an assignor which render the assigned contract unenforceable, no further allegation of fraud need be particularized as to the assignee, according to the Plaintiffs. See Pl. Br. at 13. As New Jersey courts have repeatedly held, "contracts, notes, and mortgages which violate or were obtained by practices which violate the New Jersey Consumer Fraud Act ... are void and unenforceable." Scott v. Mayflower Home Improvement Corp., 363 N.J. Super. 145, 160, 831 A.2d 564 (Law Div. 2001) (citing Accountemps Div. of Robert Half of Philadelphia, Inc. v. Birch Tree Group, Ltd., 115 N.J. 614, 626, 560 A.2d 663, 669 (1989)). Likewise, the New Jersey Supreme Court noted that "an improper debt or lien against a consumer fraud plaintiff may constitute a loss under the Act, because the consumer is not obligated to pay any indebtedness arising out of conduct that violates the Act." Cox v. Sears Roebuck & Co., 138 N.J. 2, 23, 647 A.2d 454 (1994).

Just as a plaintiff may allege fraud against a principal through actions of an agent (<u>see</u>, e.g., <u>Sandvik v. Advent</u>, 83 F. Supp. 2d 442 (D. Del. 1999), <u>aff'd</u>, 220 F.3d 99 (3d Cir. 2000)) and may allege aiding and abetting liability for fraud by focusing on the fraud of the primary actor (<u>see</u> <u>Miller v. P.G. Lewis & Assoc.</u>, 2007 WL 316446 (D.N.J. 2007) and <u>Armstrong v. Edelson.</u>, 718 F. Supp. 1372 (N.D. Ill. 1989)), so too may Plaintiffs here focus their allegations on the fraud of the assignor, NorVergence, where the claim is based on the unenforceability of agreements procured in the first instance by NorVergence's fraud.    <u>See, e.g., Allstate Ins. Co. v. Lopez</u>, 325 N.J. Super. 268, 278, 738 A.2d 987, 992 (Law Div 1999); <u>Jefferson Loan Co. v. Session</u>, 397 N.J. Super. 520, 938 A.2d 169 (App. Div. 2008).  This argument, as Plaintiffs assert, also finds support in the Restatement (Second) Contracts § 336.  It provides:

> 1) By an assignment the assignee acquires a right against the obligor only to the extent that the obligor is under a duty to the assignor; and if the right of the assignor would be voidable by the obligor or unenforceable against him if no assignment had been made, the right of the assignee is subject to the infirmity.

Restatement (Second) Contracts, § 336(1).    Along this trend, at least one court already has held that proof of fraud by NorVergence is sufficient to invalidate the ERA.  <u>See, e.g., Dolphin Capital Corp. v. Schroder</u>, 2008 WL 630602 and 2008 WL 682394 (Mo. App. 2008).[5]

According to Plaintiffs, they are not required to plead the date, place, or time of the fraud so long as an alternative means of injecting precision is used and some measure of substantiation into their allegation is present.  <u>See</u> Pl. Br. at 17 (<u>citing</u> <u>Lum v. Bank of America</u>, 361 F.3d 217,

---

[5]Plaintiffs also briefly address the Defendant's reliance on <u>Jenkins v. Mercantile Mortgage</u>, 231 F. Supp. 2d 737, 748 (N.D. Ill. 2002) for the proposition that a defrauded plaintiff may not sue the assignee of the defrauding party.  <u>See</u> Pl. Br. at 15.  According to Plaintiffs, <u>Jenkins</u>, which applies Illinois law, limits its holding to situations in which fraud is based on the Truth in Lending Act ("TILA") given that the procedural history of TILA demonstrates Congress sought to narrow assignee liability in enacting TILA, which preempts applicable state law in that area of the law.  Jenkins, 231 F. Supp. 2d at 748,  n. 5; <u>see</u> <u>Psensky v. American Honda Finance Corp.</u>, 378 N.J. Super. 221, 875 A,2d 290 (App. Div. 2005) (preemptive effect of TILA bars application of general rule that assignee is subject to claims and defenses that could have been asserted against assignor.)
In this regard, Plaintiffs also make the argument that even a holder in due course is subject to the defenses of fraud and illegality as alleged in the Complaint.  <u>See</u> N.J.S.A. §12A:9-403 and §12A:3-305(b).  <u>See</u> Pl. Br. at 15.

234 (3d Cir. 2004), cert. den. 543 U.S. 918 (2004) and other cases in support). By focusing upon the fraud of NorVergence, Plaintiffs have injected such precision into the pleading. Id.

As far as proving fraud against NorVergence is concerned, the fact that the ERAs were procured by way of a fraudulent scheme orchestrated by NorVergence is already judicially established, citing the following cases as each setting forth the deceptive and unfair practices and fraud on the part of Debtor, Federal Trade Commission v. NorVergence, Inc., 2005 WL 3754864 (D.N.J. 2005); State of Texas v. NorVergence, Inc., Case No. 2004-65357 (D. Ct. Harris Cty. Tex. April 29, 2005); Commonwealth of Massachusetts v. NorVergence, Inc., Civil Action No. 04-5100-H (Sup. Ct. Suffolk Cty., June 8, 2005); People of the State of Illinois v. NorVergence, Inc. and Peter Salzano, No. 2004-CH-655 (Cir. Ct. 7th Jud. Cir. Sangamon Cty. Ill., May 6, 2005).

Even if Debtor's fraud were not judicially established, the Second Amended Complaint adequately alleges so. The latest version of the Complaint details Debtor's fraudulent business practices as well as the "unconscionability" of the ERAs itself. See Pl. Br., pp. 21-25. Plaintiffs also compare the detail of pleadings to the allegations contained in a certain complaint filed in Wanland and Associates, Inc. v. Nortel Networks, Ltd., 384 B.R. 315 (Bankr. D.N.J. 2008). In Wanland, this Court found the fraud based claims against Nortel to be pled with the necessary specificity under Rule 9(b). Assuming Rule 9(b) is applicable, based on Wanland, Plaintiff's latest version of the Complaint fully satisfies the intent and purpose of the Rule and any further inquiry can be satisfied through discovery.

Plaintiffs further urge that Count V does not sound in fraud and is therefore not subject to the requirements of Rule 9(b). Count V alleges that the underlying agreements executed between Plaintiffs and NorVergence are unconscionable, in violation of the NJCFA. Plaintiffs point to Wanland, supra, where this Court cited case law indicating that "[t]he text of the statute and applicable case law indicate that wrongful conduct outlined in the NJCFA is to be read disjunctively, not conjunctively." 384 B.R. at 356. See also State v. Hudson Furniture Co., 165 N.J. Super 516, 520, 398 A.2d 900 (App. Div. 1979). Thus, a defendant may be liable under the NJCFA as a result of engaging in an "unconscionable commercial practice" without also engaging in an act of fraud. Where as here, plaintiffs' claims are "not premised on fraud, which is governed by Fed. R. Civ. P. 9(b), but rather seek [] a remedy for 'conduct outside the reach of

-23-

traditional common law torts such as fraud,'" Rule 9(b) does not apply. See id., at 26-27.  (citing Romano v. Motorola, Inc., 2007 WL 4199781 (S.D. Fla. 2007) (citing State of Florida v. Tenet Healthcare Corp., 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005); see also Porter v. Property Damage Control Group, Inc., 2007 WL 2907403 (E.D.N.Y. 2007) (in construing NJCFA, court held a claim alleging Unconscionability was subject only to Rule 8, not Rule 9(b))).

Rule 8(a) requires that plaintiffs give fair notice of what the claim is and the grounds upon which it rests.  The Second Amended Complaint's Count V, plaintiffs assert, easily meets this standard. Pl. Br. at 27.

Lastly, Defendant's position relating to the addition of new Plaintiffs is without merit. The Court's August 14, 2007 Order permitted the filing of an amended complaint without any restriction as to its content.  The fact that the Exhibit A list of Plaintiffs was amended as part of the amended pleading offers no basis for a motion to dismiss.  Some of these newly-added Plaintiffs have settled since the instant motions were filed; others were added by way of stipulation.  Defendant has not been prejudiced by the addition, and the statute of limitations for NJCFA, conversion and unjust enrichment claims is six years and has not run,[6] so nothing prevents Plaintiffs from filing another action to preserve their rights.  To dismiss their action would be a waste of judicial resources as it would lead only lead to another filing.  Pl. Br.  at 28.


Defendant is similarly mistaken in attempting to pursue a dismissal of Plaintiffs who already have settled their claims.  To the extent that any plaintiff has settled a claim, no such claim has been newly asserted in the amended pleading.  Nevertheless, some Plaintiffs may have settled their claims with Defendant without advising each party's respective counsel prior to the filing of the Second Amended Complaint. Id.  Plaintiffs contend to have endeavored to work with Defendant's counsel toward the common goal of modifying the Plaintiffs lists to reflect any settlements not previously disclosed.  A ruling on this issue in a motion to dismiss is premature and prejudicial at this point.[7]  Id.

--------

[6]See N.J.S.A. 2A:14-1.

[7]In the event the Court is inclined to grant Defendants' motions in full or in part, Plaintiffs request that they be given leave to amend the Complaints once again pursuant to Fed.

B) Adv. Proc. 04-2974 - Perspectives of the Parties regarding Count VII and Defendant Preferred Capital Inc.'s Receivership.[8]

In addition to Defendant United Midwest Bank's motion to dismiss Counts IV, V and VI of the Amended Complaint, Defendant HNB also filed a motion to dismiss certain counts of the amended complaint. Similar to the argument presented with respect to Rule 9(b) and Rule 8(a) and Count IV and V, HNB also argues that Count VII, "Debts or Obligations Fraudulently Contracted or Incurred, pursuant to N.J.S.A. 2A:32-1, is also subject to the same pleading standards. Since Count VII does not contain any facts demonstrating fraud on the part of HNB, a party which acquired some of the ERA's only after NorVergence had already engaged in fraud, HNB possess no notice of what and how it became liable to Plaintiffs. See *Motion Of The Huntington National Bank, Pursuant To Fed. R. Civ. P. 12 and Fed. R. Bankr. P. 7012, Seeking Dismissal Of Counts IV, V and VII Of The Amended Complaint* ("HNB Br."), pp. 9-23. Due to the fraud already having taken place prior to HNB's alleged acquisition of the ERA's, a cause of action under N.J.S.A. 2A:32-1 is not plausible to maintain as HNB never induced Plaintiffs to fraudulently incur debt. Id.    Therefore, Count VII must be dismissed. Id. at 8-9.

In response to HNB's motion, Plaintiff's opposition papers repeat much of the opposition set forth in the Celtic Adversary Proceeding. See *Plaintiff's Brief In Opposition To Motion Of The Huntington National Bank To Dismiss Counts IV, V and VII Of The Amended Adversary*

---

R. Civ. P. 15(b).

[8]These issues are raised by some of the Defendants in Adv. Pro. 04-2974, <u>Accessories of Tampa Bay/CRB, Inc. et al v. Norvergence Inc., Preferred Capital, Inc., The Huntington National Bank and United Midwest Savings Bank</u>. For the sake of completeness of the record, Defendant United Midwest Savings Bank ("UMSB"), on or about December 7, 2007, brought a motion to dismiss the latest amended Complaint. <u>See</u> Adv. Pro. Docket Rep., #79. The arguments advanced by UMSB are similar to those found in Celtic's moving papers. The Court will review UMSB's position, and Plaintiff's response thereto, as part of the evaluation of Celtic's motion.        On January 2, 2008, Defendant Huntington National Bank ("HNB") moved for a dismissal of Count IV, V, and VII of the Amended Complaint. <u>See id.</u>, #81. Since the Court will discuss HNB's arguments (which in essence does not substantially differ from Celtic's) with respect to Count IV and V as part of Celtic's motion, the Court will limit the discussion of HNB's grounds for its motion to dismiss to Count VII.

*Complaint* ("Pl. Opp. Br."). As a result, the Court need not summarize here again the content of Plaintiff's Brief.

On June 20, 2008, HNB submitted a Reply Memorandum in support of its motion to dismiss. See *Reply Memorandum Of The Huntington National Bank In Support Of Its Motion To Dismiss Counts IV, V and VII Of The Amended Complaint* ("HNB Reply Br."). HNB reiterates that Counts IV (Fraud) and VII (Fraudulent Inducement) of the Amended Complaint should be dismissed as they fail to allege any facts about HNB. In order to state a plausible claim under the NJCFA, the Plaintiffs must allege that HNB committed some "affirmative act," "knowing omission," or "regulatory violation" under the NJCFA. See, e.g., Pacholec v. Home Depot USA, Inc., 2006 WL 2792788 (D.N.J. 2006). Count IV lacks any facts to show HNB perpetrated any of these "unlawful practices." and it lacks any facts to show that HNB caused an ascertainable loss. HNB Reply Br. at 3. Count VII does not mention HNB at all and does not raise a plausible claim. Id. at 3.

HNB asserts Rule 9(b) is applicable to Counts IV, V and VII as the Third Circuit applied Rule 9(b) to the NJCFA in Frederico v. Home Depot, 507 F.3d 188, 202-03 (3d Cir. 2007) and FDIC. v. Bathgate, 27 F.3d 850, 876 (3d Cir. 1994). As well, this Court's Opinion in Wanland and Associates, Ltd. v. Nortel Networks, Ltd., *supra*, held that where a plaintiff's claim under the NJCFA rests in fraud, the heightened pleading requirements of Rule 9(b) is applicable. HNB Reply Br. at 4. Plaintiffs' pleadings fail to comport with Rule 9. Alleging fraud against NorVergence, as a purported assignor does not excuse Plaintiffs from having to allege fraud with particularity as against HNB. Plaintiffs contend that they may focus their allegations on the fraud of the assignor Norvergence and seek a declaration that the ERA is unenforceable due to NorVergence's fraudulent procurance. But a declaration of unenforceability is not all the relief Plaintiffs seek. They also seek damages against the Defendants, including HNB. HNB asserts that the stringent pleading requirements of R. 9 are necessary to place the defendant on notice of the precise misconduct with which it is charged. Here, Plaintiffs did not provide such notice. HNB Reply Br. at 8.

HBN's Reply points to Windy City Metal Fabricators & Supply Inc. v. CIT Technology Financing Services, Inc., 2007 WL 495276 (N.D. Ill., Febr. 9, 2007) *aff'd in part and rev'd in part by* Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.,

536 F.3d 663 (7th Cir.(Ill.) Aug 01, 2008) as a case supporting its position.  In that case, two lessees sued CIT and others, seeking compensatory, statutory and punitive damages for allegedly deceptive, unlawful and unfair business practices arising from NorVergence's ERAs.  The Lessees alleged NorVergence had assigned certain ERA's to CIT.  CIT and other defendants moved to dismiss the amended complaint for failure to allege fraud with the requisite particularity under Rule 9(b). According to HBN, the trial court agreed with the defendants and noted that the plaintiffs failed to establish CIT's connection to NorVergence beyond CIT's role as an assignee of Norvergence's ERA's and the allegations in the Amended Complaint which attempted to link CIT with Norvergence failed to do so with the requisite particularity.  HNB Reply Br. at 10.

As Plaintiffs here have failed to indicate the basis for HBN's liability, and have failed to provide specific factual allegations against HBN, Counts IV, V and VII of the Complaint against HBN must be dismissed with prejudice.

Defendant PCI has also moved for a dismissal of the operative complaint, Adv. Proc. 04-2974, based on Plaintiffs' failure to obtain permission from the Ohio state court which oversees the PCI receivership.  Alternatively, PCI[9] also seeks a dismissal of the Complaint's Count IV, V and VII based on Rule 9(b) and 12(b)(6).

According to PCI, on April 14, 2005, the Summit County Court of Common Pleas in the State of Ohio appointed Kathryn A. Belfance as Receiver for PCI.  _See Memorandum Of Law In Support Of Preferred Capital Inc.'s Motion To Dismiss Adversary Complaint_ ("PCI Br.") at 3. Since being appointed, the Receiver has taken possession of various PCI assets on behalf of the court that appointed her.  The Receiver is an arm of the appointing court and, as such, the property in the possession the court through the Receiver is property that is in the custody of the State of Ohio.  Id.

The Bankruptcy Court in New Jersey lacks jurisdiction over the Receiver and over the property the Receiver holds for PCI.  See White v. Swing, 159 U.S. 36, 39 (1894); Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 88-89 (1923); Bamette v. Wells Fargo Nevada Nat. Bank of

_____

[9]PCI also argues that the Counts, which invoke NJCFA as a legal bases, cannot stand as the great majority of plaintiffs are non-New Jersey residents.  This argument as well as PCI's position on Count IV and V will be addressed through the analysis of Celtic's motion to dismiss.

San Francisco, 270 U.S. 438, 441 (1926); Fusion Oil, Inc. V. Am. Petroleum Retail, Inc., 2006 U.S. Dist. Lexis 48248 at *6-7 (D. Oh. 2006).  By way of the complaint, Plaintiffs seek to wrestle control from the Ohio State court of the assets in its custody.  Therefore, Plaintiffs must obtain permission from the Ohio court in order to bring this litigation.  Absent the permission, this Court does not possess the subject matter jurisdiction to adjudicate the instant action. PCI Br. at 4-5.

Plaintiffs, in their opposition Brief, repeat many of the arguments advanced in response to Celtic's motion to dismiss.  See *Plaintiffs' Brief In Opposition To Motion Of Preferred Capital Inc. To Dismiss Counts IV, V And VII Of The Amended Adversary Complaint* ("Pl. Opp. Br.-PCI").  Since an unconscionability claim does not sound in fraud, Count V of the operative complaint cannot be deemed to be within the scope of Rule 9(b). Id. at 7, 21. Plaintiffs also assert that statutory claims such as presented here should not be found to be within the scope of Rule 9(b). Id. at 6.  Plaintiffs further argue that where the allegations of fraud relate to the actions of an assignor which render the assigned contract unenforceable, no further allegations of fraud need be particularized as to the assignee.  "While the original Complaint in this case focused in part on such statements, the most recent version of the Complaint focuses instead on the uneforceability of the underlying ERA's themselves, which were procured by the undeniable, judicially-acknowledged fraud of Norvergence and which Preferred Capital is estopped from enforcing." Id. at 8.  According to Plaintiffs, PCI incurred liability when it attempted to enforce an ERA that had previously been fraudulently procured by NorVergence.

PCI's subject matter jurisdiction defense has no merit because control of property is not at issue.  The Amended Complaint seeks declaratory action preventing Defendant from further enforcement of  the ERA and the entry of a judgment for compensatory monetary damages.  "Whether upon the entry of such an award, plaintiffs would need to seek authority of an Ohio court in order to execute upon the assets of PCI is an issue not yet ripe for decision." Id. at 23.  The issue is solely whether the Court has subject matter jurisdiction to adjudicate the parties' rights and enter judgment for monetary damages and declaratory relief.  Id.

Plaintiffs argue a federal court must look to the sources of its power and not to the acts of states which do not possess the ability to enlarge or contract the federal jurisdiction.  Id. (citing Markham v. City of Newport News, 292 F.2d 711, 713 (4th Cir. 1961)).  According the Plaintiffs,

the Supreme Court has "repeatedly and unequivocally rejected the proposition that a state may oust the federal courts of jurisdiction by creating an exclusive forum for claims against an estate. Pl. Opp. Br.-PCI at 23. (citing <u>Gross v. Weingarten</u>, 217 F.3d 208 (4th Cir. 2000). The existence of this proceeding does not create potential inconvenience for the receiver. Nor is there an issue of Ohio state law which would call for an application of the <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (U.S. 1943) abstention doctrine. Given this, federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." <u>Quackenbush v. Allstate Ins. Co.</u>, 571 U.S. 706, 716 (1996).

In its reply, Defendant PCI concedes that abstention is not applicable here, but takes issue with the cases Plaintiffs rely upon. According to PCI in its *Reply Memorandum Of Preferred Capital, Inc. In Support Of Its Motion To Dismiss Amended Complaint* ("PCI Repl. Memo") , the cases deal with a different set of circumstances than those presented here. The Sixth Circuit Court of Appeal's decision in <u>In re DeLorean Motor Co.</u>, 991 F.2d 1236, 1240 (6th Cir. 1993) PCI urges is instructive. <u>See</u> PCI Repl. Memo at 3. <u>In Delorean</u>, similar to the facts presented in this case, the court stated that a suit brought without leave to recover judgment against a receiver for a money demand is in effect an effort to take property from the trust without regard to the rights of other creditors or the orders of the court which is administrating the trust property. Leave must be obtained first, the Sixth Circuit Appeals Court held. PCI Repl. Memo at 3 (citing <u>In re Delorean</u>, 991 F.2d at 1240. Based on this case holding, as Plaintiffs failed to obtain leave from the Ohio Court, Plaintiffs claims should be dismissed against PCI.

## C) <u>Legal Discussion</u>

### 1) Standard for Rule 12 (b) 6 Motion to Dismiss
The movants seek the dismissal of certain counts of the Plaintiff's Second Amended Complaint based on Fed. R. Civ. P. 12(b)6, Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 8. Pursuant to Fed. R. Civ. P. 12(b) 6, made applicable to this proceeding by Fed. R. Bankr. P. 7012(b), a party may move to dismiss a complaint for failure to state a claim upon which relief may be granted. A motion presented under Rule 12(b) 6 "serves to test the sufficiency of the factual allegations in the plaintiff's complaint." <u>In re DVI, Inc., et al</u>, 2008 Bankr. Lexis 2338 at *5; 50

Bankr. Ct. Dec. 159 (D. Del. 2008).  (citing <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir.

1993)); <u>Morris v. Azzi</u>, 866 F. Supp. 149, 152 (D.N.J. 1994) (a Rule 12 (b) 6 motion challenges

the legal sufficiency of a claim in order to determine whether it should proceed).    It is also

designed "to eliminate actions that are fatally flawed in their legal premise and destined to fail,

and thus spare the litigants the burdens of unnecessary pretrial and trial activity." <u>Advanced

Cardiovascular Sys., Inc. v. SciMed Life Sys.</u>, 988 F.2d 1157, 1160 (Fed. Cir. 1993), reh'g en

banc denied, <u>Hess v. Advance Cardio Vascular Systems, Inc.</u>, 520 U.S. 1277 (1997).

For many decades, federal courts relied on <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)

for the proposition that under Rule 12 (b) 6 a complaint could only be dismissed if it "appeared

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." <u>Apace Communications, LTD v. Burke, et al.</u>, 522 F. Supp. 2d 512, 515

(W.D.N.Y. 2007).   In <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-74 (2007), the U.S.

Supreme Court, confronted with a Rule 12(b) 6 motion to dismiss an antitrust claim for failure to

plead in accordance to Rule 8(a) 2, dispensed with the <u>Conley</u>'s "no set of facts" language.  As a

proper restatement of the Rule 12 (b)6 standard, the <u>Twombly</u> Court stated

> While a complaint attacked by a Rule 12(b)6 motion to dismiss does not need
> detailed factual allegations, a plaintiff's allegation to provide the 'grounds' of
> his entitlement to relief requires more than labels and conclusions, and a
> formulaic recitation of a cause of action's elements will not do.  Factual
> allegations must be enough to raise a right to relief above the speculative level
> on the assumption that all of the complaint's allegations are true.

<u>Twombly</u>, 127 S.Ct. at 1959. "There must be "plausible grounds to infer actionable conduct, i.e.

enough "to raise a reasonable expectation that discovery will reveal evidence of [actionable

conduct]." <u>Apace Communications, LTD. v. Burke, et al.</u>, 522 F. Supp. 2d 512 (W.D.N.Y.

2007). (citing <u>Twombly</u>, 127 S.Ct. at 1974); <u>Wilkerson v. New Media Technology Charter</u>, 522

F.3d 315, 321). "The issue is not whether a plaintiff will ultimately prevail but whether the

claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232,

236 (1974); <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 482 (3d Cir. 2000).

The Third Circuit has interpreted <u>Twombly</u> as requiring that "[t]he allegations of the

complaint should 'plausibly suggest' the pleader is entitled to relief." <u>Wilkerson</u>, 522 F.3d 315,

321 (citing Twombly, 127 S.Ct. at 1966).  "After Twombly, it is no longer sufficient to allege

mere elements of a cause of action; instead a complaint must allege facts suggestive of [the

proscribed] conduct." Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

The landmark case of Twombly did not affect the well-settled standard that when

considering a Rule 12 (b) 6 motion, a reviewing court "must accept all well-pleaded allegations

in the complaint as true, and view them in the light most favorable to the plaintiff." In re DVI,

Inc., 2008 Bankr. Lexis 2338 at * 6  (Bankr. D. Del. 2008) (citing Carino v. Stefan, 376 F.3d

156,159 (3d Cir. 2004); see also Gary v. AirGroup, Inc., 397 F.3d 183, 186 (3d Cir. 2005).

In Ashcroft v. Javaid Iqbal, the U.S. Supreme Court characterized the Rule 12 (b)(6)

"plausibility" standard as follows: "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

Ashcroft v. Javaid Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 268 (2009) (citing Twombly at

570, 127 S. Ct. 1955, 167 L. Ed. 2d 929).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. (citing Twombly at 556).  The Ashcroft Court also

commented that "[t]he plausibility standard is not akin to a "probability requirement," but it asks

for more than a sheer possibility that a defendant acted unlawfully." Id. (citing Twombly). "

Determining whether a complaint states a plausible claim for relief will ... be a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense."Id.

(internal citation omitted).


2) Standard for Rule 8(a) Motion to Dismiss

Fed. R. Civ. P. 8(a)(2), as incorporated into the Bankruptcy Code by Rule 7008(a) of the

Fed. Rules of Bankr. P., states in relevant part that a pleading stating a claim for relief must also

contain "a short and plain statement of the claim showing that the pleader is entitled to relief,"

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (U.S. 2009),  in order to provide "the defendant fair

notice of what the ... claim is and the grounds upon which it rests," Id. at 1961.  To comply with

Rule 8 (a) 2's 'notice pleading requirements and to prevent a dismissal of a complaint based on

Rule 12 (b) 6,  "[a] plaintiff need not set out in detail the facts upon which he bases his claim, so

long as he gives the defendant(s) fair notice of the claim" and the reasons giving rise to the claim

-31-

to permit a defendant to answer and to prepare for trial.  In re Plassein Internat. Corp., et al., 352

B.R. 36, 42 (Bankr. D. Del. 2006).(internal citations omitted).


3) Standard for Rule 9(b) Motion to Dismiss

Another way to obtain a Rule 12 (b) 6 dismissal involves a plaintiff's failure to meet the

heightened pleading requirements of Fed. R. Civ. P. 9(b), made applicable to bankruptcy

proceedings pursuant to Fed. Bankr. R. P. 7009.  According to Rule 9(b), a party alleging fraud

"must state with particularity the circumstances constituting fraud ....  Malice, intent, knowledge,

and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).  The

purpose of the heightened pleading requirement of Rule 9(b) "is to provide notice, not to test the

factual allegations of the claim." Morganroth & Morganroth v. Norris, McLauglin & Marcus,

P.C., 331 F.3d 406, 414 n.2 (3d Cir. 2003) (citing Gutman v. Howard Savings Bank, 748 F.Supp.

254, 257 (D.N.J. 1990)).  Rule 9(b)'s demand for specificity exists to enable defendants to

prepare a defense to the allegations.  See Rolo v. City Investing Co. Liquidating Trust, 155 F.3d

644, 659 (3d Cir. 1998).  It "requires plaintiffs to plead with particularity the circumstances of

the alleged fraud to place the defendants on notice of the precise misconduct with which they are

charged." In re Inacom Corp., et al., 2001 Bankr. Lexis 1297 at *6 (Bankr. D. Del. 2001). (citing

Seville Indus. Machin. v. Southmost Machin., 742 F.2d 786, 791 (3d Cir. 1984)).

Even though Rule 9 mandates the pleading of fraud claims with precision, "courts have

relaxed the rule when factual information is peculiarly within defendant's knowledge or

control." Saporito v. Combustion Engineering, Inc., 843 F.2d 666, 674-75 (3d Cir. 1988) vacated

on other grounds by Combustion Eng'g, Inc. v. Saporito, 489 U.S. 1049 (1989).  Generally, fraud

allegations of date, place, and exact manner qualify for purposes of meeting the R. 9 standard.

Seville Machine Corp., 742 F.2d 786, 791 (3d Cir. 1984); In re Rockefeller Ctr. Props. Secs.

Litg., 311 F.3d 198, 217 (3d Cir. 2002) (who, what, when, where and how of events at issue may

serve as adequate support for a fraud claim).  A plaintiff is free, however, to  utilize "alternative

means of injecting precision and some measure of substantiation" into a fraud allegation.  In re

Seville Machine Corp., 742 F.2d at 791.  It is also customary in the context of bankruptcy to

interpret Rule 9 liberally, particularly when a third party outsider to the fraudulent transaction is

bringing the action.  In re MacGregor Sporting Goods, Inc., 199 B.R. 502 (Bankr. D.N.J. 1995

(citing In re O.P.M. Leasing Serv. Inc., 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983)).

With respect to pursuing a complaint against multiple defendants, Rule 9(b) permits the pleading of intent, knowledge and other conditions of a defendant's mind to be averred generally.  Nevertheless,  "[r]ule 9(b) does not allow a complaint to merely lump multiple defendants together but requires] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Apace Communications, Ltd., 522 F. Supp. 2d 512, 517. (citing Swartz v. KPMG, LLP., 476 F.3d 756, 764 (9th Cir. 2007)) (internal citation omitted); see also Poling v. K. Hovanian Enterprises, 99 F. Supp. 2d 502, 508 (D.N.J. 2000), appeal dism'd, 32 Fed. Appx. 32 (3d Cir. 2002).

4) Pleading Adequacy of Second Amended Complaint's Counts IV, V, VI,  and VII

Defendants argue that Count V, "Unconscionability under the New Jersey Consumer Fraud Act," is subject to the  Rule 9(b) standards and the particular pleadings are not in compliance.  In contrast, Plaintiffs do not believe Rule 9(b) to be applicable and propose that Rule 8(a) is to be applied instead.

N.J.S.A. 56:8-2 of the NJCFA, provides in relevant part:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid whether or not any person in fact has been mislead, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8-2.

According to the New Jersey Supreme Court, "[t]he Act specifies the conduct that will amount to an unlawful conduct practice in the disjunctive, ...." Cox v. Sears Roebuck & Co., 138 N.J. 2, 19, 647 A.2d 454 (1994).  "Proof of any one of those acts or omissions ... will be sufficient to

establish unlawful conduct under the Act." Id.   Stated differently, these statutory elements "are in the disjunctive rather than the conjunctive.  As such, a violation may occur if there is a showing of "unconscionable commercial practice." D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J. Super. 11, 22, 501 A.2d 990 (Supp. Ct. App. Div. 1985) (citing Hyland v. Aquarian Age 2000, Inc., 148 N.J. Super. 186, 191 (Ch. Div. 1977)); see also State v. Hudson Furniture Co., 165 N.J. Super. 516, 520, 398 A.2d 900 (App. Div. 1979).  As this Court has already noted on a prior occasion, "[t]hus, a defendant may be liable under the NJCFA as a result of engaging in an "unconscionable commercial practice," without also engaging in an act of fraud." Wanland and Associates, Inc. v. Nortel Networks, Ltd. (In re NorVergence, Inc.), 384 B.R. 315, 357-58 (Bankr. D.N.J. 2008) (citing Hudson Furniture Co., 165 N.J. Super. at 179).

a) Count IV- Fraud under the NJCFA

Count IV sets forth the fraud allegations against NorVergence. See Second Am. Compl., ¶ 141 (NorVergence's deceptive and unfair practices, ¶ 142 (NorVergence's material misrepresentations).   Count IV, ¶ 148 states that "Defendant, in contrast to Plaintiffs, had expertise in equipment financing and had ready access to data regarding the gross disparity between the value of the equipment and the payment stream under the ERA" and implicates Defendant once more when it is stated that "Defendant may not collect upon these fraudulent instruments." See id., ¶ 151.

As the Defendants correctly note, the caption of Count IV indicates that "Fraud under the NJCFA" is the reason for the pleadings and any resulting liability.   The pleadings detail the alleged fraudulent conduct of NorVergence with the required specificity.

Plaintiffs' counsel, during oral arguments, informed the Court that Plaintiffs have determined to "streamline" the Complaint.  Plaintiffs' counsel explained that Plaintiffs intend to argue the liability of the Defendants under Count IV arises by virtue of accepting the assignment of fraudulently procured ERAs and guarantees.  Specifically, Plaintiffs urge that the ERAs and related documents are the product of fraud both in the inducement and in the execution perpetrated by Norvergence, and therefore are void from their inception.  Plaintiffs further urge that the leasing companies as assignees of the fraudulently procured ERAs and guarantees "stand in the shoes of Norvergence" and are liable to the Plaintiffs for fraud. (Tr. Of June 2, 2009 at 60)

-34-

In Jefferson Loan Co., Inc., the Appellate Division addressed the question of whether an assignee of a Retail Installment Sales Contract ("RISC") can be held liable under the CFA for the assignee's own unconscionable commercial practices in the affirmative. Jefferson Loan Co., 397 N.J. Super 520, 538 (App. Div. 2008). In Psensky v. Am. Honda Fin. Corp., a case cited by the Jefferson Court, the Appellate Division also stated that an assignee of a RISC could be found liable under the CFA for its own independent acts: "[a] plaintiff would ... be entitled to maintain a cause of action under the [CFA], ... where the assignee's fraud was active and direct. Fraud committed by the assignee before the assignment of the loan would also be independent ... and separate..., and thus actionable." Psensky v. Am. Honda Fin. Corp., 378 N.J. Super. 221, 231-32, 875 A.2d 290 (App. Div. 2005) (citing Jackson v. South Holland Dodge, Inc., 197 Ill. 2d 39, 258 Ill. Dec. 79, 755 N.E. 2d 462, 469 (2001)).

It should be noted that some of the cases, like Psensky and Jefferson Loan Co., involve Truth in Lending Act claims in addition to an effort of parties to bring an NJCFA claim. There is case law suggesting that assignees may have exposure to broad liability for wrongs committed by assignors, that contractual privity between an assignor and assignee could be a factor creating such exposure. See, e.g., Carmen v. Metrocities Mortgage Corp., CV. No. 08-2729, 2009 U.S. Dist. LEXIS 42245 at * (D.N.J. May 18, 2009) (citing Psensky, 378 N.J. Super. at 221) ("New Jersey's holder law broadly subjects assignees to any liability claim that can be asserted against the [seller]"); see also Jefferson Loan Co., Inc., 397 N.J .Super at 535 (citing Perth Amboy Iron Works, Inc. v. Am Home. Assur. Co., 226 N.J. Super. 200, 211, 543 A.2d 1020 (App. Div. 1998), aff'd, 118 N.J. Super 249, 571 A.2d 294 (1990).

The District Court in Carmen noted:

> Assignees may be held liable under the NJCFA for their own subsequent performance of the contract, and, in some cases, for the original seller's conduct. See *Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520, 938 A.2d 169, 177 (N.J. Super. Ct. App. Div. 2008)* ("We conclude that an assignee of a RISC can be held liable under the CFA, for its own unconscionable commercial activities in the subsequent performance of the assigned contract."); cf. *Psensky v. Am. Honda Finance Corp., 378 N.J. Super. 221, 875 A.2d 290, 293 (N.J. Super. Ct. App. Div. 2005)* (noting that "New Jersey's holder law broadly subjects assignees to any liability claim that can be asserted against the [seller]"). However, assignee [*21] liability under the NJCFA for violations of the TILA is limited. An assignee can be held liable under the NJCFA for the original lender's failure to make

disclosures at the closing only to the extent that the assignee could be held liable under the TILA. See *Psensky, 875 A.2d at 296* (finding that "compliance with the TILA is a complete defense" to NJCFA claims against assignee). Because the Court has permitted Plaintiffs to amend their complaint to show that assignee liability under the TILA is appropriate in this case, it is possible that Plaintiffs will be able to establish that assignee liability under the NJCFA for the TILA violations is appropriate. Furthermore, Countrywide may be liable as an assignee for any acts alleged to have violated the HOEPA, which contains a broad assignee liability provision. See *15 U.S.C. § 1641(d)*. Finally, Countrywide may be held liable as an assignee for a RESPA fee-splitting violation, and therefore may also be held liable under the NJCFA for any such violation.

As to Countrywide's liability under the NJCFA for its own misconduct, the Court finds that the misconduct described by Plaintiffs does not give rise to a NJCFA claim. Plaintiffs' allegations  [*22] that Countrywide demanded excess payments may support a breach of contract claim, but a mere breach of contract does not violate the NJCFA. See *Cox v. Sears Roebuck & Co., 138 N.J. 2, 647 A.2d 454, 462 (N.J. 1994)* (finding breach of contract without "substantial aggravating circumstances" is not a violation of NJCFA). Furthermore, Plaintiffs' allegation of credit defamation, which is separate from Countrywide's performance under the contract, does not give rise to a NJCFA claim.

Although it is possible that Plaintiffs will be able to pursue NJCFA claims against Countrywide based on Countrywide's assignee status, the Court finds that Plaintiffs' NJCFA allegations are insufficient. In their Amended Complaint, Plaintiffs merely state, "[a]t all times material, the closing(s) above described, constituted a 'sale' of the aforesaid premises as that term is defined by the New Jersey Consumer Fraud Act, *N.J. Stat. § 56:8-1, et seq.* ("NJCFA"), which Defendants are in violation and liable therefore to Plaintiffs." (Amended Complaint at P 64.) The Court will allow Plaintiffs to amend their complaint to explain how each defendant violated the NJCFA. Plaintiffs should note that the elements of a NJCFA claim  [*23] are "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 964 A.2d 741, 749 (N.J. 2009)*. Further, where claims are based on omissions, intent is an additional element. *Cox, 647 A.2d at 462*.

Carmen, 2009 U.S. Dist. LEXIS at *19-22. Carmen thus supports the Plaintiffs position that assignees may bear such liability under the NJCFA..

Defendant pointed to Jenkins v. Mercantile Mortgage Company, 231 F. Supp. 2d 737

(N.D. Ill. 2002), another case dealing with TILA liability and the Illinois Consumer Fraud Act.

The Jenkins Court noted that an assignee's

-36-

> [l]iability hinges on whether a plaintiff alleges that the assignee "directly participated
> in a scheme," not merely the timing of the assignment.  Conclusory allegations of
> actual knowledge are "at best nothing more than a claim that [the assignees]
> knowingly received the benefits of another's fraud."  ICFA does not provide a cause
> of action for knowing receipt of benefits in violation of the [consumer] fraud act.
> Here, Jenkins has not alleged any participation in an active scheme or indirect action
> by PCFS, so she cannot state a claim of direct or pre-assignment fraud against PCFS.

Jenkins, 231 F.Supp. 2d at 748 (citing Jackson, 755 N.E. 2d at 470).  This Court finds Jenkins not dispositive here.

In Count IV the Plaintiffs invoke Defendant's expertise in equipment financing and arguably allege Defendant knew it accepted the benefits of a violation of the NJCFA.  See Second Am. Compl., ¶ 148.  ("Defendant, in contrast to Plaintiffs, had expertise in equipment financing and had ready access to data regarding the gross disparity between the value of the equipment and the payment stream under the ERA.")  The allegations of Count IV provide a plausible basis upon which Defendant can be held liable under the NJCFA.  While mere knowledge may be insufficient to invoke liability, specific acts of Defendants are identified that it is asserted violate the NJCFA.  Count IV's allegations are sufficient to plausibly assert a claim for liability upon the Defendant based on an ERA assignment. Count IV, seeking monetary damages from Defendants by virtue of Defendant being an assignee of a NorVergence ERA, states a plausible cause of action under New Jersey law.  Accordingly, the motion to dismiss Count IV is denied.

The same analysis applies to Defendants' efforts to dismiss Count VII ("Debts or Obligations Fraudulently Contracted or Incurred Pursuant to N.J.S.A. 2A: 32-1").  The pleadings detail the alleged fraudulent conduct of Norvergence.  The allegations in Count VII are sufficient to plausibly assert a claim.  Accordingly, the motion to dismiss Count VII is denied.

b) Count V - Unconscionability under the NJCFA
In the present case, Plaintiffs base their request for relief on Defendants' alleged unconscionable conduct, i.e. the continued enforcement of ERAs in spite of the contracts being fraudulently procured by NorVergence.  The term  "Unconscionability" involves "an amorphous concept obviously designed to establish a broad business ethic.  The standard of conduct that the

-37-

term 'unconscionable' implies is lack of 'good faith, honesty in fact and observance of fair dealing.'" Cox, supra, 138 N.J. at 19 (citing Kugler v. Romain, 58 N.J. 522, 543, 279 A.2d 640, 651 (1971)). "Unconscionability is to be interpreted liberally in order in "to effectuate the public purpose of the CFA." Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520, 535, 938 A.2d 169 (Sup. Ct. App. Div. 2008) (citing Assocs. Home Equity Servs., Inc. v. Troup, 343 N.J. Super. 254, 278, 778 A.2d 529 (Sup. Ct. App. Div. 2001)).

During the June 2, 2009 hearing, Plaintiffs emphasized that while Plaintiffs allege NorVergence committed fraud, Defendants are also liable for unconscionable conduct including the "procedural unconscionability," that led to the execution of the subject agreements. (Tr. of June 6, 2009 at 75). Here the Plaintiffs asked that the Court consider what they characterize as the oppressive terms contained in the agreements. Id. Based on the applicable case law cited above, unconscionable conduct can be alleged against a party without also lodging a fraud claim. See Hudson Furniture Co., supra, 165 N.J. Super. at 520. At least one court, interpreting the NJCFA provisions and case law, has concluded that as long as a claimant alleges unconscionability, not fraud, Rule 9(b) is of no consequence. See Porter v. Property Damage Control Group, Inc., 2007 WL 2907403 at * 2 (E.D.N.Y. Sept. 28, 2007). An unconscionability claim, however, is subject to the notice pleadings of Rule 8(a). See Id., (Even though the district court acknowledged it was not aware of any specific cases applying Rule 8 in order to evaluate the sufficiency of claims under the NJCFA, it adopted the recommendation from the Magistrate Judge to rely on the rule based on Kugler v. Romain, supra, and deemed a breach of contract claim adequate to survive a motion to dismiss).

Defendant urges application of Rule 9 to any NJCFA based claim regardless of whether the claim actually sounds in fraud. In support for its position, Defendant points to several cases, among them Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494 (D.N.J. 1999); Zebersky v. Bed, Bath & Beyond, Inc., No. 06-CV-1735(PGS), 2006 U.S. Dist. LEXIS 86451 (D.N.J. Sept. 25, 2006); Szcubelek v. Cendant Mortgage Corp., No. 00-2858(SSB), 2001 U.S. Dist. LEXIS 26110 (D.N.J. June 15, 2001) and FDIC v. Bathgate, No. 91-2779, 1993 U.S. Dist. LEXIS 20293 (D.N.J. July 19, 1993), aff'd 27 F.3d 850 (3d Cir. 1994).

Similar to the cases cited by the Defendant, the moving defendants in Porter directed the court to cases supposedly observing a strict Rule 9(b) application to NJCFA claims. As the

<u>Porter</u> Court concluded, and as this Court notes after reviewing Defendant's cases, the cited cases concerned instances where the plaintiffs "were held to the Rule 9(b) standard" when they expressly alleged fraud. <u>Porter</u>, 2007 U.S. Dist. LEXIS 74004 at *8, n.3. Specifically, <u>Naporano</u> involves a plaintiff alleging misrepresentation and false promises; the plaintiff in <u>Zebersky</u> alleged affirmative misrepresentations, while the class action plaintiffs in <u>Szcubelek</u> asserted the defendant, Cendant Mortgage Corp., itself illegally and deceptively overcharged its borrowers fees in excess of the amounts charged by appraisers. Finally, in the <u>Bathgate</u> case, the defendants leveled accusations of fraudulent misrepresentation. When, as the Plaintiffs argue, a Defendant is alleged to have engaged in unconscionable conduct by enforcing ERAs fraudulently procured by Debtor, Defendant's cases become clearly distinguishable and must be regarded as inapposite to the matter at hand.

In this regard, Defendant HNB invokes the cases above as well as <u>Windy City Metal Fabricators & Supply Inc. v. CIT Technology Financing Services, Inc.,</u> 2007 WL 495276 (N.D. Ill., Febr. 9, 2007) *aff'd in part and rev'd in part by* <u>Windy City Metal Fabricators & Supply, Inc. v. CIT Technical Financing Services, Inc.,</u> 536 F.3d 663 (7th Cir.(Ill.) Aug 01, 2008) in support of the dismissal of Plaintiff's operative Complaint based on Rule 9 and Rule 8. The Court will review in detail this case as the facts are similar to the operative facts in the present case.

In <u>Windy City</u>, Plaintiffs, who purchased Matrix solution hard and software through an ERA from NorVergence, filed a five-count class action complaint against Defendant CIT and another defendant seeking disgorgement of monies received from supposedly unenforceable contracts (Count One), damages recoverable under the Uniform Deceptive Trade Practices Act, 815 ILCA 51012 et seq. (Count Two), the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCA 51012 et seq. (Count Three) and common law fraud (Count Four) with a separate count seeking punitive damages (Count Five). Almost eleven months later, the court dismissed without prejudice Count One for vagueness, Counts Two and Four through Six for failure to plead fraud with particularity. Thereafter, plaintiffs filed an amended complaint.

> Count I alleges a violation of the CFA, Count II is an assertion of the real defense
> of illegality, Count III is a claim for rescission. Count IV seeks a declaratory

judgment that the ERAs are unenforceable under the CFA, the UDTPA, and the
Uniform Commercial Code.  Count V seeks punitive damages ... and Count VII
seeks a declaratory judgment that a certain "Assurance of Voluntary
Discontinuance" is void ab initio under the CFA.  Count VIII alleges common
law fraud.

Windy City, 2007 WL 495276 at *2.  The trial court dismissed with prejudice all of the counts of

the amended complaint for failure to meet the Rule 9(b) pleading standard finding:

While the Amended Complaint devotes an enormous amount of time to alleging
fraud on the part of the Norvergence, it has failed to establish CIT's connection to
Norvergence beyond CIT's role as an assignee of Norvergence's ERAs.  There
are approximately eight major allegations in Amended Complaint which attempt
to link CIT with Norvergence, but all fail to do so with the requisite particularity.

Id.  The Windy City court noted that plaintiffs had not provided evidence demonstrating

defendant's role, participation in or knowledge of Norvergence's misconduct prior to the

assignments of ERAs. Id. at *3-4.    On appeal, the Seventh Circuit Court of Appeals applied

Twombly and  affirmed the lower court's dismissal of the common law fraud claim pursuant to

Rule 9(b). See Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing

Services, Inc., 536 F.3d 663, 669-70 (7th Cir. 2008).   However, the appeals court reversed the

dismissal of the Amended Complaint as far as defendants' alleged unfair practices in violation of

the Illinois Consumer Fraud and Deceptive Business Practices Act.  These claims, according to

the Seventh Circuit, do not have to comply with any heightened particularity standard in Rule

9(b).  They must only satisfy the notice pleading standard of Rule 8(a).  See id.

The Court of Appeals explained that The Illinois Consumer Fraud Act is a regulatory and

remedial statute intended to protect consumers against fraud, unfair methods of competition, and

other unfair and deceptive business practices.  Id.  It also noted the Illinois Supreme Court's

statement that unfair as well as deceptive conduct may facilitate a recovery under the Act.

Generally, three considerations guide an Illinois court's determination of whether conduct is

unfair under the CFA:

1)whether the practice offends public policy; 2) whether it is immoral, unethical,
oppressive, or unscrupulous; 3) whether it causes substantial injury to consumers."
Id. (citing Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 266 Ill. Dec. 879,
775 N.E. 2d 951, 960 (2002)).  A court may find unfairness even if the claim does not

-40-

satisfy all three criteria. Id. For example, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. Id. (citing Robinson, supra).

In Windy City, the appeals court concluded

> [b]ecause neither fraud nor mistake is an element of unfair conduct under Illinois Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Rule 8(a), not the particularity requirement in Rule 9(b). Therefore, under federal notice pleading standards, the complaint need only provide a short and plain statement of the claim that shows, through its allegations, that recovery is plausible rather than merely speculative.

- Id. at 670.

This Court finds the rationale espoused by the Seventh Circuit persuasive. In many respects, the construction of the Illinois Consumer Fraud Act appears similar to the approach exhibited by New Jersey courts with respect to the NJCFA. The Appeals Court's decision supports Plaintiff's position and compels this Court to agree that Rule 8(a), not Rule 9(b) is to be applied to Plaintiff's claim for unconscionable conduct against Defendant as embodied by Count V of the Second Amended Complaint.

Count V details the alleged unconscionable acts of Debtor and paragraphs 157 through 159 seek relief against Defendant due to its allegedly wrongful effort to collect and pursue payments under the ERAs from Plaintiffs in violation of N.J.S.A. 56:8-2. Id. at 29. In other words, Count V's content supports Plaintiff's assertion that Defendant is liable for alleged unconscionable and improper collection efforts.

As this particular claim does not sound in fraud, Rule 9(b) does not control the Court's analysis. Under Rule 8(a), the Second Amended Complaint's Count V must offer a "short and plain statement of the claim showing that the claimant is entitled to relief." Here, the latest version of the Complaint clearly connects the taking of the ERA assignment, the enforcement of the ERA with an alleged violation of N.J.S.A. 56:8-2. As a consequence, the "allegations in [Count V] satisf[ies] the baseline requirement of Rule 8(a)...." Porter, 2007 U.S. Dist. LEXIS 74004 at *9 and set forth plausible claims. Accordingly, the Motion to Dismiss Count V is denied.

This same analysis applies to Defendants' efforts to dismiss Count VI, the Unjust Enrichment claim. As a result the allegations in Count VI satisfy the baseline requirements of

Rule 8(a) and set forth plausible claims.[10]  Accordingly, the Motion to Dismiss Count VI is denied.

5) NJCFA and its Applicability to Non-New Jersey Plaintiffs.

Movant contends the NJCFA based claims pursued by Plaintiffs residing outside the State of New Jersey must be dismissed as the Act does not apply to protect residents from other states. Instead, these non-New Jersey residents must resort to their own home state consumer protection laws as each state possesses an overriding interest in protecting its own citizens from fraud. Plaintiff disagrees and argues the law has been applied to non-New Jersey consumers where, as here, the transaction originated in New Jersey with a New Jersey provider.

As a general matter, there is "little doubt that the New Jersey Legislature intended its Consumer Fraud statute to apply to sales made by New Jersey sellers even if the buyer is an out-of-state resident and some aspect of the transaction took place outside New Jersey." Boyes v.

---

[10]As stated by Judge Dickinson R. Debevoise, U.S.S.D.J, citing the NJ Supreme Court in VRG Corp :

> In order to demonstrate unjust enrichment, Plaintiffs must show that (1) they conferred a benefit on [Defendant], and (2) retention of that benefit  [**91] without payment would be unjust. VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 641 A.2d 519, 526 (N.J. 1994); Restatement (First) of Restitution § 1 (1937). Under New Jersey law, "[t]he unjust enrichment doctrine requires that [P]laintiff[s] show that [they] expected remuneration from [Defendant] at the time [it] performed or conferred a benefit on [the Defendant] and that the failure of remuneration enriched [Defendant] beyond its contractual rights." VRG Corp., 641 A.2d at 526. In other words, Plaintiffs must show that they got something less than they paid for, and [Defendant should be required as a matter of equity to make them whole.

In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46,72; 2009 U.S. Dist. LEXIS 35595 *91(D.N.J. 2009), See also Cooper v Samsung Electronics America, Inc., 2008 U.S. Dist. LEXIS 75810, *27(D.N.J. 2008)(Linares, U.S.D.J.).  Cooper also adds:

> New Jersey's doctrine of unjust enrichment serves to protect a party's interest where an adequate remedy does not exist at law and equity demands restitution. Premier Pork L.L.C. v. Westin, Inc., No. 07-1661, 2008 U.S. Dist. LEXIS 20532, 2008 WL 724352, 13 (D.N.J. Mar. 17, 2008); Associates Commercial Corp. v. Wallia, 211 N.J. Super. 231, 511 A.2d 709, 716 (N.J. Super. Ct. App. Div. 1986).

Cooper, 2008 U.S. Dist. LEXIS 75810, *27.

-42-

Greenwich Boat Works, Inc., 27 F. Supp. 2d 543, 547 (D.N.J. 1998) (applying NJCFA to a sale of a boat between a New Jersey seller and a Pennsylvania buyer where the boat was constructed in North Carolina and docked, after delivery, in Delaware. Part of the boat sale transaction occurred in New Jersey, the seller met with buyer in New Jersey where the misrepresentations were made and the buyer also signed the purchase order in the state).   This notion is premised upon the Act being broadly designed to protect the public and "was intended to be one of the strongest consumer protection laws in the nation." Id. (citing Huffmaster v. Robinson, 221 N.J. Super. 315, 319, 534 A.2d 435, 437 (Law Div. 1986).  "While there can be no doubt that the New Jersey Legislature desired to protect its own residents, it is equally clear that this state has a powerful incentive to insure that local merchants deal fairly with citizens of other states and countries. Id. At the same time, as one court noted, "it is not clear ... that New Jersey intended out-of-state consumers to engage in end runs around local law in order to avail themselves of ... remedies that those states deny." Knox v. Samsung Electronics America, Inc., CV No.: 08-4308(JLL), 2009 U.S. Dist. LEXIS 53685 at * 10 (D.N.J. June 25, 2009). (refusing to apply NJCFA to plaintiff's claims where Samsung, the defendant, was incorporated in New Jersey and did business in the state but its contacts with the consumer all occurred in Georgia.  As a result, the court determined Georgia law to govern the adjudication of the case).

Any analysis of the dispute regarding what state law is of consequence must begin by addressing the forum selection or choice of law clause in the ERA.  In the event this contractual provision is invalid, the court must decide the issue in accordance with the "most significant relationship test."  This principle stands for the proposition that the state with the dominant interest in the matter will supply the controlling law.  See, e.g., In re Mercedes-Benz Tele Aid Contract Litigation, 257 F.R.D. 46 (D.N.J. 2009) (conducting the most significant relationship test to determine the state whose law must apply to plaintiffs' consumer fraud claim).

The ERAs at the heart of this litigation contain a forum selection clause.[11]  They provide in relevant part:

This agreement shall be governed by, construed and enforced in accordance with

---

[11]According to Celtic, "the law has clearly upheld choice of law clauses and the one in the instant case is enforceable." See Celtic Br. at 20 n.11.

the laws of the State in which Rentor's [Norvergence's] principal offices are located; or if this Lease is assigned by Rentor [Norvergence], the State in which the assignee's principal officers are located, without regard to such State's choice of law considerations and all legal actions relating to this Lease shall be venued exclusively in a state or federal court located within that State, such court to be chosen at Rentor's assignee's sole option.  You hereby waive right to a trial by jury in any lawsuit in anyway related to this rental.

The first portion of this provision pertains to the choice of law while the second part deals with forum selection.  Already, on a previous occasion, the Court determined not to enforce the forum selection clause with respect to certain prior motions before this Court in connection with these Adversary Proceedings.[12]  Part of this Court's June 29, 2006 opinion was devoted to an analysis of the provision as a result of Defendant Lyons Financial d/b/a U.S. Bankcorp's position invoking the clause as a basis to have the court dismiss the complaint against the bank in a related Adversary Proceeding (Adv. No. 04-2946).

When a federal court is called upon to consider the effect of a contractual forum selection clause, federal common law governs. Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995). This is because questions concerning the enforceability of forum selection clauses are procedural in nature.  Id.

Under federal law "forum selection clauses . . . are prima facie valid and should be enforced unless enforcement is show by the resisting party to be 'unreasonable' under the circumstances."  The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  The burden of demonstrating that a forum selection clause is unreasonable falls on the party that is objecting to the enforcement of the clause.  Coastal Steel Corp. v. Tilghman Wheelbarator Ltd., 709 F.2d 190, 203 (3d Cir. 1983). To show that a forum selection clause is unreasonable, "a party objecting to the enforcement of a forum selection clause as 'unreasonable' must meet a strict standard of proof."  In re Diaz Contracting, Inc., 817 F.2d 1047, 1051 (3d Cir. 1987) (citation omitted).  A

---

[12]Celtic's argument targets in particular the choice of law aspect of this clause. Regardless of whether the choice of law or forum selection is placed in dispute, case law applies essentially the same Coastal Steel Corp. analysis to these clauses.  See, e.g., Druckers', Inc. v. Pioneer Electronics (USA), Inc., CV No. 93-1931, 1993 U.S. Dist. LEXIS 15003 at * 15 (D.N.J. Oct. 20, 1993). ("Under New Jersey law, courts may uphold a contractual choice of law provision where the contract bears some reasonable relation to the chosen forum and the public policy of the forum state is not violated.")

forum selection clause is:

> presumptively valid and will be enforced by the forum unless the party objecting
> to its enforcement establishes (1) that it is the result of fraud or overreaching, (2)
> that enforcement would violate a strong public policy of the [instant] forum, or (3)
> that enforcement would in the particular circumstances of the case result in
> litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel, 709 F.2d at 202. In Hays v Merrill Lynch, the Third Circuit later clarified how a

court should view concerns about delay and cost in the enforcement of a forum selection clause:

> [B]oth Coastal Steel and In re Diaz indicate that any bankruptcy-related concerns
> about delay and cost in the enforcement of a forum selection clause are not alone
> sufficient to overcome the policy favoring enforcement of such clauses...

Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1162 (3d Cir. Pa.

1989). Therefore, while concerns about delay and/or costs of enforcement are relevant in the

analysis, a court shall not deem a forum selection clause invalid on these grounds alone. Relying

on Copelco Capital, Inc. v. Shapiro, 331 N.J. Super. 1, 4-6,(N.J. Sup. Ct. App. Div. 2000), a case

where the New Jersey state court declined to enforce a forum selection clause in which litigation

was agreed to take place in "the state in which our or our assignee's principal corporate offices

are located," a clause similar to the one at issue before the Court, this Court previously

determined the forum selection clause to be violation of the State of New Jersey's "strong public

policy" as it failed to give adequate notice as to the forum where litigation will occur [and what

state will supply the governing law]. See Copelco, 331 N.J. Super. at 5.[13]

In light of the issues raised regarding the ERA forum selection/ choice of law clause, the

Court will address the matter through the "most significant relationship test." In 2008, the New

Jersey Supreme Court "expressly declined to apply the traditional flexible governmental interest

test to [a] tort claim, instead opting to apply the Restatement (Second)'s "most significant

relationship" test [and the corresponding choice of law factors included in the Second

Restatement]. Agostino v. Quest Diagnostics, Inc., 256 F.R.D. 437, 461 (D.N.J. 2009). (The

---

[13]Since the parties have access to the June 29, 2006 Opinion, as is evidenced by the fact
that the opinion is cited frequently by the parties, the Court will not repeat the full analysis here
and, instead, direct them to consult the June 29, 2006 Opinion concerning the forum selection
clause. See Exh. A to Certification of Gary S. Lewis, Esq. In Support of The Huntington
National Bank's Motion To Dismiss Counts IV, V and VII of Amended Adversary Complaint
(Adv. No. 04-2974).

court undertook a choice of law analysis based on the most significant relationship test regarding Plaintiffs' NJCFA claims) (citing P.V. v. Camp Jaycee, 197 N.J. 132, 962 A.2d 453 (2008)).  The most significant relationship test consists of two steps. Procedurally, the first step is to determine whether and actual conflict exists between the laws of the various states by examining the substance of the potentially applicable laws. Intrarome Fragrance & Flavor Corp. v. Zarkades, CV. No. 07-873, 2009 U.S. Dist. LEXIS 25793 at * 15 (D.N.J. March 30, 2009) (citing Camp Jaycee at 143).  If there is no distinction between the laws, there is no choice of law issue to be resolved and the court will apply the law of the forum state.  Id.; In re Mercedes Benz, 257 F.R.D. at 57.  In the event that "an actual conflict exists, the second prong entails a weighing of the factors enumerated in certain sections of the Restatement corresponding to the particular cause of action to determine which state has the most significant relationship.  Id. (citing Camp Jaycee at 144).  In doing so, the Court must consider two sets of factors: 1) the general considerations articulated in §6 and 2) those specific to each claim. In re Mercedes Benz, 257 F.R.D. at 57 (internal citation omitted).

In application of the most significant relationship test's first prong to the case at hand, numerous "[c]ourts have recognized that significant conflicts exist between the NJCFA and the consumer protection statutes of other states." Agostino, 256 F.R.D. at 461. (citing Elias, 252 F.R.D. at 247; Fink v. Ricoh Corp., 365 N.J. Super. 520, 584, 839 A.2d 942 (Law Div. 2003)).  The Agostino Court also pointed to Int'l Union, supra,  where the New Jersey Superior Court, Appellate Division "noted the many conflicts between the NJCFA and various state counterparts." Id. at 462. (citing Int'l Union v. Merck & Co., 384 N.J. Super. at 294-95) (New Jersey allows and often encourages private class actions for consumer fraud while other states prohibit them; New Jersey law permits legal action in connection with sale of goods or services for commercial or business uses while other states confine their consumer fraud statute remedies to items purchased primarily for personal, family or household purposes, some states require proof that the defendant willfully or knowingly made false representations with specific intent to deceive, while New Jersey does not require such a showing and the NJCFA also provides for the availability of punitive or treble damages which distinguishes the Act from those of other states).  Therefore, the Court agrees with Celtic that actual conflicts exist between the NJCFA and the consumer protection laws of other states.

The second prong of the most significant relationship test "requires the Court to weigh the factors enumerated in the Restatement section corresponding to the Plaintiff's cause of action." Agostino at 461. (citing Camp Jaycee, 197 N.J. 132, 962 A.2d 453). As far as claim specific Restatement factors, "[s]ection 148 of the Restatement governs choice of law analysis for consumer fraud claims." In re Mercedes Benz at 64-65. (citing Restatement (Second) of Conflict of Laws §148, Comment (a); Agostino, 2009 U.S. Dist. LEXIS 10451 at *20). Section § 148 states:

1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
          a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
          b) the place where the plaintiff received the representations,
          c) the place where the defendant made the representations,
          d) the domicile, residence, nationality, place of incorporation and place of business of the parties,
          e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
          f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148. In addition to the factors listed in § 148, the Court is also directed to consider the general provisions found in Restatement § 6 and balance the principles of both sections against each other. In re Mercedes Benz at 61 (citing Camp Jaycee at 463). Section 6 contains the following factors:

a) the needs of the interstate and international systems,
b) the relevant policies of the forum
c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular field of law,
d) the protection of justified expectations,

-47-

e) the basic policies underlying the particular field of law,
f) certainty, predictability and uniformity of result, and
g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws § 6 (1971); In re Mercedes Benz at 61.

The court finds Agostino, Boyes, supra, as well as Knox v. Samsung, supra, instructive. In Agostino, the New Jersey District Court, in an action whereby putative class Plaintiffs sought to hold defendant Quest Diagnostics, Inc. liable for unlawful billing practices, denied Plaintiff's motion for class certification. See Agostino, 256 F.R.D. at 479. One of the considerations involved an evaluation of the choice of law. The court, after engaging in a most significant relationship test, concluded that:

> while the purportedly billing practices may have emanated from Quest's home state of New Jersey, they were directed at each plaintiff's home state. With respect to debt collectors, none of these defendants is headquartered in New Jersey. Rather, they are based in Massachusetts, Michigan, New York and Washington. Based on the foregoing, the Court finds that there is a strong presumption under Section 148 that the consumer fraud law of each class plaintiff's home state should apply to his [consumer fraud] claim.

Id. at 463. In Boyes, as noted already, the Court noted that the seller met with a Pennsylvania purchaser in New Jersey, allegedly made misrepresentations at a place of business in New Jersey, and purchaser signed the purchase order in New Jersey. Boyes, 27 F. Supp. 2d at 545. Therefore, the Boyes Court found the NJCFA to be applicable to the sales transaction at hand. The Boyes and Agostino cases stand in sharp contrast with Knox v. Samsung, supra. In Knox, the Plaintiff, a Georgia resident, alleged Samsung engaged in fraud and pursued a NJCFA based claim, among others. According to the Knox Court, Samsung is incorporated in New Jersey and conducts business there. Knox, 2009 U.S. Dist. LEXIS at *11. However, the consumer contacts all occurred in Georgia. The Knox Court also noted: "this court does not have allegations as specific as those in Elias. Elias v. Ungar's Food Products, Inc., 252 F.R.D. 233, 246 (D.N.J. 2008) before it; the Complaint is not specific about the place of manufacture or design of the printers, and this Court is loath to assume facts outside of the Complaint in deciding a motion to dismiss." Id. As a result, the court in Knox found Georgia to be the state with the greatest interest in applying its

law.[14] <u>Id.</u>

A review of the cases cited above make clear that the determination regarding which state enjoys the most significant relationship with the parties is fact specific.  For example, the Second Amended Complaint in Adv. 04-2939 indicates Utah to be the state where Defendant Celtic Bank maintains a place of business.  It also describes the Plaintiffs as "non-profit entities, charitable associations, governmental bodies and small businesses located throughout the continental United States, which maintain places of businesses at the locations listed on Exhibit "A".  <u>See</u> Second Am. Compl., ¶1.  Exhibit A contains a list of the thirty seven (37) original Plaintiffs, all of whom maintain a place of business outside New Jersey.  The Complaint itself is silent with respect to what the contacts were between each of the alleged NorVergence Clients and Defendants, where the contacts originated, where the alleged "injury" occurred and the sales contracts were executed. It is clear, however, from the record that Debtor was incorporated in New Jersey and conducted business there.  It is also clear that the Defendant and other similarly situated Defendants in other Adversary Proceedings are non-New Jersey entities.  But in order to make a determination what state's law must guide the disposition of the case as hand, the Court is in need of the information above, something the operative Complaints fail to provide.

The U.S. Supreme Court has held that plaintiffs "have a due process right to have their claims governed by the state law applicable to their dispute." <u>Agostino</u>, 256 F.R.D. at 460 (citing <u>Philips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 821-23 (1985).   Based on the limited record before the Court as found in the operative Complaint, the Court is unable to designate the appropriate state to supply the law for the adjudication of Plaintiffs' claims. Due process interests require the Plaintiffs to supply the lacking information by amending the Complaint.[15]  Said

---

[14]Noteworthy is the <u>Knox</u> Court's decision on defendant's motion to dismiss to apply Georgia law to plaintiff's consumer fraud claim, as plaintiff stated there, she would not proceed under the Georgia law equivalent of the NJCFA, accordingly, the court dismissed the cause of action with prejudice. <u>See</u> <u>Knox</u>, 2009 U.S. Dist. LEXIS at *11.

[15]In their Brief, Plaintiffs attempt to provide some of the missing information and resort to some general statements as to why New Jersey law is applicable.  However, statements such as "the vast majority of assignees [including Defendant] contracted directly with a New Jersey company (again, Norvergence) and do business here" are not specific enough. Furthermore, on a motion to dismiss the Court must consider the allegations contained within the four corners of

amendments shall be filed and served within forty-five (45) days of the date of this Opinion.  For now, however, Defendant's request to dismiss Plaintiffs' NJCFA claims is denied.

6) Claims of All Newly Added Plaintiffs and Fed. R. Civ. P. 15.

Defendants argue the claims of newly added Plaintiffs must be dismissed as improperly filed since they have not obtained permission from this Court to be added to the case pursuant to R. 15.  Plaintiffs assert the Court's August 14, 2007 Omnibus Order, submitted and approved without objection by any defendant, permitted the filing of an amended complaint without any restriction as to its content.  Thus, the addition of new plaintiffs is permissible.  A dismissal of their claims would only result in more adversary proceedings as the statute of limitations had not expired.  During the June 2, 2009 hearing, the Plaintiffs also requested permission from the Court to add these Plaintiffs on a <u>Nunc</u> <u>Pro</u> <u>Tunc</u> basis. (Tr. of June 2, 2009 at 112).

Fed. R. Civ. P. 15(a), made applicable to this proceeding by Fed. R. Bankr. P. 7015, requires that court grant leave to amend a complaint "freely when justice so requires." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).   "...[I]t is within the Court's discretion to grant or deny a motion for leave to amend." <u>Amp'd Mobile, Inc. v. Adderton</u> (<u>In re Amp'd Mobile, Inc.</u>), 395 B.R. 582, 585. (citing <u>Foman v. Davis</u>, 371 U.S. at 182).  The policy of the Federal Rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."  <u>Id.</u> (citing <u>Dussouy v. Gulf Coast Inv. Corp.</u>, 660 F.2d 594, 598 (5th Cir. 1981); <u>Lundy v. Adamar of New Jersey, Inc.</u>, 34 F.3d 1173, 1186 n.19 (3d Cir. 1994)).

The Supreme Court has interpreted Rule 15(a) to permit the denial of a motion to amend only upon finding of

> undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [or] futility of amendment.

<u>Arch Personal Care Products, L.P. v. Malmstrom</u>, 2003 U.S. Dist. LEXIS 15258 at * (D.N.J.

---

the complaint as well as any attached exhibits and documents incorporated therein. <u>See</u> <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993);  <u>Pani v. Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 71 (2nd Cir. 1998).  The Plaintiffs may not amend the Complaint merely through the incorporation of information contained in their Brief that is not contained in the Complaint itself.

2003) (citing Foman, 371 U.S. at 182); Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 272-73 (3d Cir. 2001).  The non-moving party opposing a motion to amend under Rule 15 carries the burden "to demonstrate that its ability to present its case would be seriously impaired were amendment allowed." Amp'd Mobile, Inc. v. Adderton (In re Amp'd Mobile, Inc.), 395 B.R. 582, 586 (citing Dole v. Arco, 921 F.2d 484, 488 (3d Cir. 1990)).

Defendants base their opposition to the addition of new plaintiffs on the March 29, 2005 and August 14, 2007 Orders.  As a result of Plaintiffs' verbal motion made during oral arguments on June 2, 2009, the Court is now confronted with Plaintiffs' request for Nunc Pro Tunc Relief.

Pursuant to Foman and other cases cited above, a motion to amend in order to add new plaintiffs must be freely granted.  Defendants, as parties opposing the motion to amend, carry the burden to show prejudice if Plaintiffs are successful in obtaining the requested relief.  After reviewing this record, the Court finds that no prejudice is shown as Defendants base their opposition on the Court's prior orders and their interpretation of the case law.  Defendants do not demonstrate undue delay, bad faith or futility of amendment by the proposed addition of Plaintiffs.  Thus, the Court will utilize its discretion and permit the addition of the new Plaintiffs to the instant Adversary Proceedings.

Defendants point to Romani v. Shearson Lehman Hutton, 929 F.2d 875, 881 (1st Cir. 1991)  and Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 76 (2nd Cir. 1998) among other cases asserting that "[i]t is unanimously held throughout the Circuit Courts that courts are not required to grant leave if leave has not been sought." Id. at 24.  Even if these cases stand for that proposition, they  are unavailing here where the Defendant has not carried its burden in opposing the relief sought by Plaintiffs and where the relief is sought on a nunc pro tunc basis.

With regard to nunc pro tunc relief, in Official Committee of Unsecured Creditors v. Clark (In re Nat'l Forge Co.), 304 B.R. 214, 216 (Bankr. W.D. Pa. 2004, the committee filed an adversary complaint asserting fraudulent transfer claims after the bankruptcy court entered an order of confirmation.  In response to the commencement of the adversary proceeding, several affected parties objected to the filing.  The committee subsequently sought by motion clarification "that it either had authority to file the complaint under prior orders of the court or, in the alternative, that it should be granted such authority nunc pro tunc." Id. at 216, 221-22.  The court noted:

[m]any of the issues could have been avoided if the Creditors' Committee had sough Court approval to bring the action before the filing of the Complaint. Absent, nunc pro tunc relief, a dismissal would surely be followed by a new adversary Complaint against the Individual Defendants. Nunc pro tunc relief is appropriate in the present Adversary Proceeding as dismissing it for failure to seek prior approval would be inefficient. See Official Comm. Of Unsecured Creditors v. Cablevision Sys. Corp. (In re Valley Media, Inc.), 2003 Bankr. LEXIS 940, 2003 WL 21956410 (Bankr. D. Del., Aug. 14, 2003)).

Id. at 222-23.

Even though In re National Forge Company does not involve an application of Rule 15, the case is instructive in so far as it deals with prior court orders and nunc pro tunc relief to prevent the dismissal of a complaint which would be re-filed immediately thereafter. This Court will follow National Forge Company and grant Plaintiffs' motion for nunc pro tunc relief and permit the newly added plaintiffs to remain in the case. It would be waste of resources for the parties and this Court to dismiss the claims of the affected Plaintiffs only to have Plaintiffs commence new separate Adversary Proceedings which, in time, and after proper motion practice would likely be consolidated into the present Adversary Proceedings.

    7) The Dismissal of Plaintiffs Who Have Already Settled with Defendants.
Defendants urge the Court to dismiss with prejudice the claims of certain Plaintiffs who have reached a settlement and have already released certain defendants from further liability. In support, Defendants have attached an exhibit to the Markovich Certification setting forth the names of parties who reached a settlement with certain defendants. Plaintiffs oppose the dismissal due to the unavailability of certain information. Nevertheless, Plaintiffs claim to have endeavored to work together with Defendants' counsel to update the lists in order to keep track of the settlements.

Since the Plaintiffs' counsel have agreed to work with Defendants' counsel, it appears that the issue is moot. Unless the Court is presented with an actual dispute ripe for adjudication, the Court must deny the requested relief.

Another reason why the Court must deny Defendant's motion with respect to Plaintiffs who have already settled is the need to update the information regarding those settlements which precludes a disposition of the issue in summary fashion.

8) Count VII - Debts or Obligations Fraudulently Contracted or Incurred Pursuant to N.J.S.A. 2A:32-1.

For the reasons set forth above, the Court denies the motions for dismissal of Count VII. Count VII of the Second Amended Complaints seeks to hold Defendants liable for damages and requests declaratory relief.  Based on the Windy City cases, and the Seventh Circuit's decision to reverse the dismissal of all non-common law fraud claims, the Court will leave Count VII in place as Plaintiffs attempt to pursue plausible claims against Defendant as a consequence of Defendants' enforcement of the  ERAs.  The NJCFA, assuming Plaintiffs can avail themselves of the Act, permits claims for fraudulent and/or unconscionable conduct and therefore Defendants may or may not have liability for damages in the event they are determined to have violated the Act.

9) Impact of Preferred Capital Inc.'s Ohio Receivership in Adv. Pro. 04-2974

PCI argues that "[u]nder Bankruptcy Rule 7012 and Federal Rule of Civil Procedure 12(b)(1)-(2), the Court should dismiss the Complaint because the Court lacks jurisdiction over the Receiver appointed by the Ohio court and over the property in the possession of the Ohio Court through the Receiver."  Motion to Dismiss at 4.  According to Preferred Capital "the [ ] Plaintiffs seek to wrestle control from the state court in Ohio of the assets in its custody.  No one has obtained permission to bring this litigation from the Ohio court, and therefore, this Court must dismiss the Amended Complaint."  Id. at 5.

In response, the Plaintiffs argue that the "Amended Complaint seeks declaratory relief and the entry of a judgement for compensatory damages," and "[w]hether, upon the entry of such an award, plaintiffs would need to seek authority of an Ohio court in order to execute upon the assets of Preferred Capital is an issue not yet ripe for decision.  Id. at 23.  Additionally, the Plaintiffs argue that 28 U.S.C. § 959(a) permits plaintiffs to sue the receiver.  Pl. Reply Br. - Cred. at 24.[16]

_____

[16]28 U.S.C. § 959(a) provides:

Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such actions shall be subject to the general equity power of such court so far as

In its Reply, PCI contends that 28 U.S.C § 959(a) does not apply here, and urges the Court to follow the Sixth Circuit's decision in <u>In re DeLorean Motor Co.</u>, 991 F.2d 1236, 1240 (6th Cir. 1993) ("It is well settled that leave of the appointing forum must be obtained by any party wishing to institute an action in a non-appointing forum against a trustee, for acts done in the trustee's official capacity and within the trustee's authority as an officer of the court . . .Section 959 serves as a limited exception to the above described rule (the "Barton Doctrine"), allowing suits against the trustee for actions taken while "carrying on business""). <u>Preferred Capital Reply</u> at 3.

In Ohio, under R.C. 2735.01(A) and (E), "a receiver is an individual appointed by a court in an action by a creditor to subject property or funds to his claim, when it is shown that the property or funds are in danger of being lost, removed or destroyed, or when a corporation is insolvent or in imminent danger of insolvency." <u>The Huntington Post Bank v. Weldon F. Stump & Co.</u>, 2008 WL 1921742 at *3.  Generally, "property in charge of a receiver is in the custody of the court by which he was appointed and under which is acting, and that as a general rule other courts cannot entertain a suit against the receiver to recover such property, except by leave of the court of his appointment." <u>Barnette v. Wells Fargo Nevada Nat. Bank of San Francisco</u>, 270 U.S. 438, 441 (1926).  Additionally, "in order for parties to file suit against a receiver for actions taken regarding the receivership estate, however, leave of court is required.  <u>Huntington Post Bank</u>, 2008 WL 1921742 at *3 (citations omitted). "This power extends to the institution of any suit, and not just a proceeding for execution of a judgment against the receivership in the receivership court." <u>Liberte Capital Group, LLC, v. James A. Capwill</u>, 462 F.3d 543, 551 (6th Cir. 2006), citing <u>Barton v. Barbour</u>, 104 U.S. 126, 129 (1881).  "Whether leave to sue will be granted, rests in the discretion of the court." <u>Door Run Coal Co. v. Nelsonville Coal Co.</u> 21 Ohio Dec. 198, 200 (1910).  Further, "failure to obtain such leave does not affect the jurisdiction of the court in which the suit is brought but that the requirement is for the receiver's protection, that he may waive the requirement and that the question is in fact one of contempt, and not of jurisdiction." <u>Sherrets v.</u>

---

the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury.

<u>Tuscarawas Savings & Loan Co.</u>, 70 N.E.2d 127, 129 (1945).

In the instant case, by order dated April 14, 2005, Judge Jane Bond of the Court of Common Pleas, Summit County, Ohio, appointed Kathryn A. Belfance as "the Receiver for all assets of PCI, including, but not limited to, all real and personal property, general intangibles, and other assets of PCI of whatever kind or nature . . . [with] all authority and power of a Receiver under Ohio law and as ordered by this Court." As Judge Bond appointed the receiver, leave must be sought from Judge Bond, and there is no merit to Plaintiffs argument that "[w]hether, upon the entry of such an award, plaintiffs would need to seek authority of an Ohio court in order to execute upon the assets of Preferred Capital is an issue not yet ripe for decision." <u>See Plaintiffs' Brief in Opposition to Motion of Preferred Capital Inc. to Dismiss Counts IV, V and VII of the Amended Adversary Complaint.</u> at  23.  Additionally, 28 U.S.C. § 959(a), which provides that receivers may be sued without leave of the appointing court, does not authorize the Plaintiffs here to proceed without obtained leave from the Ohio Court, as by its plain terms,  that section is only applicable "with respect to any of their acts or transactions in carrying on business connected with such property."  Therefore Plaintiffs, on pain of dismissal of the complaint, are directed within forty-five (45) days of the date of this Opinion, to make appropriate motion to the Ohio Court for leave to proceed with the instant action.  PCI's motion to dismiss the amended complaint on this basis, is held in abeyance until the Ohio Court rules on the motion.


10) Motions to Dismiss in the Aftermath of <u>Twombly</u> and <u>Ashcroft</u>.

Now that the Court has addressed most of the legal challenges lodged against the Second Amended Complaint, one more issue remains.  Lastly, as part of this motion to dismiss, the Court will place the operative Complaint within the 12(b)(6) standard in the wake of <u>Twombly</u>.   Under <u>Twombly</u>, "[t]he allegations of the complaint must plausibly suggest the 'pleader is entitled to relief.'" <u>Wilkerson,</u> 522 F.3d 315, 321 (citing <u>Twombly</u>, 127 S.Ct. at 1966).  There must be plausible grounds to create a reasonable expectation that discovery will reveal evidence of actionable conduct.  <u>Apace Communications, Ltd. v. Burke</u>, 522 F. Supp. 2d 512 (citing <u>Twombly</u>, 127 S.Ct. at 1974).  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Scheuer v. Rhodes</u>, 416

U.S. 232, 236 (1974).  The burden of demonstrating that dismissal is appropriate rests on the movant.  See Paul v. Intel Corp., 496 F. Supp. 2d 404, 408 (D. Del. 2007).

In application, Plaintiffs attempt to hold Defendants liable for unconscionable or otherwise unlawful conduct, i.e. attempting to enforce the ERA against former NorVergence customers even though the customers did not receive the products and services they paid for.  The operative Complaint alleges fraud on the part of NorVergence and Count V of the Complaint seeks to connect Defendant's liability due to its enforcement of certain NorVergence ERAs that were procured allegedly through fraud.   Plaintiffs claim losses even though these are not necessarily quantified with precision.

Unconscionability has been defined as implying a "lack of good faith, honesty in fact and observance of fear dealing." Cox v. Sears, Roebuck & Co., 138 N.J. 2, 18 (citing Kugler v. Romain, 58 N.J. 522, 543)).  By claiming that Defendants enforced the ERAs despite NorVergence's clients not receiving the products and services they paid for, Plaintiffs have averred facts that, if proven, could support the statutory definition of unconscionability under the statute and make relief more than merely speculative.[17]  In so doing, Plaintiffs have adequately stated a claim for relief.  See  In re Windy City, 536 F.3d at 672.(internal citation omitted).

As a legal theory, "[a]ssignees "may be held liable under the NJCFA for their own subsequent performance of the contract, and, in some cases, for the original seller's conduct." Carmen v. Metrocities Mortgage Corp., CV. No. 08-2729, 2009 U.S. Dist. LEXIS 42245 at *20 (D.N.J. May 18, 2009) (citing Jefferson Loan Co., Inc. v. Session, 397 N.J. Super. 520, 938 A.2d 169, 177 (N.J. Super. App. Div. 2008)).  Whether the facts of this case ultimately support the Plaintiffs' efforts to impose liability upon the Defendants will be determined at trial.

As far as documentation evidencing the assignments of ERAs between NorVergence and the Defendants is concerned, some of the Defendants have pointed to Plaintiff's failure to submit such evidence as one of the reasons requiring the dismissal of the Complaint.  During the June 2, 2009 hearing, Plaintiffs indicated that they possess such evidence and argued that the discovery phase would provide an opportunity to make it available to the Defendants.   Since none of the Defendants have denied they have acquired ERAs from NorVergence, there appears a sufficient

---

[17] Assuming that Plaintiffs can avail themselves of the NJCFA.

bases to leave the Complaint in place pending the discovery.[18]  Plaintiffs have asserted plausible

claims that raise a reasonable expectation that discovery will reveal evidence of actionable

conduct.  When accepting the pleaded allegations in the Complaint as true and viewing them in

the light most favorable to the Plaintiffs, the Court must deny Defendants' motions to dismiss the

Second Amended Complaints.

### II) Credential's Summary Judgment Motion in Adv. Pro. 04-2944

Defendant Credential moves for a dismissal of all claims and summary judgment as there

are no ERAs between any of the Plaintiffs and NorVergence that were purchased or assigned to

Credential.  Also, Plaintiffs' contracts which were assigned to Credential required Pennsylvania

law, not New Jersey law, to be applied and that all matters be litigated in Pennsylvania.  See *Brief

of Defendant, Credential Leasing Corporation In Support Of Motion Seeking Dismissal Of All

Claims In The Second Amended Complaint And Summary Judgment* ("Credential Br.") at 1.

Credential asserts the following herein.  In 2003, Credential and Primary Financial Corp.

("Primary") executed agreements under which Credential purchased certain Equipment Lease

Agreements ("ERA"s) from Primary which Primary had entered into with customers/lessees

including Plaintiffs here.  (Affidavit of Andrew Schwab, filed February 3, 2005).  Credential

never purchased an ERA directly or indirectly from NorVergence or become an assignee of any

ERA between Norvergence and either Plaintiff or any other third party.  Id. at 2.  As to

Credential, Defendant asserts that there are no documents attached to any of the Amended

Complaints because such documents do not exist and because the purchased ERAs were not

procured from NorVergence.  Furthermore, Credential has not communicated with NorVergence

in any way, either orally or in writing.  Id. at 5. Schwab Affid., ¶ 9.

Credential further urges that the parties have contractually agreed that personal

---

[18]During the June 2, 2009 hearing, Defendants counsel indicated certain Defendants
never took NorVergence ERAs.  In the affected Adversary Proceedings where no assignment
occurred, Plaintiffs' counsel has expressed a willingness, subject to verification of such facts, to
work with Defendants to appropriately dismiss and/or settle those claims. (Tr. of June 2, 2009 at
81).

jurisdiction over Plaintiffs as well as subject matter jurisdiction rests with the courts in
Pennsylvania.  Similarly, the parties have also contractually obligated themselves to litigate under
Pennsylvania law.  Thus, the action pending before this Court must be dismissed.  Credential Br.
at 6.

Plaintiffs, apart from reiterating arguments advanced in opposition to the motions to
dismiss the operative Complaint, assert that this summary judgment motion is premature, that
genuine issues of material fact exist and prevent the granting of the relief requested by Defendant.
Discovery has not commenced and must be permitted to take place before the case is evaluated on
the merits. Plaintiffs argue that the difference in this case is that the ERAs at issue name Primary
as the "Lessor" and Norvergence as the "Vendor" of the Matrix system.  That difference,
Plaintiffs urge, is irrelevant as the ERAs at issue were void at their inception as a product of the
fraudulent scheme of NorVergence and in violation of the NJCFA.  Plaintiffs urge, and this Court
agrees, that the issue as framed by Plaintiffs as to how or why Norvergence required these
Plaintiffs to sign ERAs which named Primary (as opposed to Norvergence) as the lessor cannot
be properly addressed until after the discovery process.  See *Plaintiffs' Response To Defendant
Credential Leasing Corporation's Motion To Dismiss The Second Amended Complaint And For
Summary Judgement* ("Pl. Opp. Resp.") at 3-4.

Plaintiffs also urge that genuine material issues of fact exists as to whether Credential took
the ERAs without notice of any claim. Moreover, whether Credential can claim holder in due
course status typically involves questions of fact that preclude summary judgment. See
Resolution Trust Corp. V. Gill, 960 F. 2d 336, 343 (3d Cir. 1992).  Also, Plaintiffs assert that
New Jersey law is applicable to the case at hand.  Even though the ERAs at issue contain a
Pennsylvania choice of law provision, this clause is not effective as it is NorVergence's conduct
prior to the execution of the ERA at issue and that conduct must be analyzed under New Jersey
law. Pl. Opp. Resp. 9-11.  Moreover, Pennsylvania has no substantial relationship to the
underlying transaction where NorVergence, a New Jersey company, made representations to
Plaintiffs, two New Jersey businesses that persuaded Plaintiffs to execute the ERAs.  The
application of Pennsylvania law under these circumstances would contravene the public policy of
New Jersey, a state which has a materially greater interest in the resolution of this matter than
does Pennsylvania.  Id. at 12.

In New Jersey, the enforceability of choice of law clauses, like forum selection clauses, is governed by the requirements of notice and reasonableness, in order to promote fundamental fairness. Copelco Capital, Inc. v. Shapiro, 331 N.J. Super. 1, 5 (App. Div. 2000). In response to Credential's original summary judgment motion, Plaintiffs submitted the Lewin and Marshall affidavits, which Plaintiffs assert well established that NorVergence initially solicited Plaintiffs with telephone calls and in-store solicitations. These initial propositions were followed up with numerous in-person consultations by NorVergence employees All of these communications took place in New Jersey where Plaintiffs are located and where NorVergence did business and where the pieces of equipment are located. Since New Jersey was the initial place where the ERAs were negotiated, as well as the place where the contract was signed and would have been performed, New Jersey law applies. Pl. Opp. Resp. at 13.

Credential's motion to for summary judgment on the grounds that the ERA's contain a jurisdictional or forum selection clause, identifying Pennsylvania as a forum for subject matter jurisdiction is also without merit. The clause is not applicable to the dispute and, even if it did apply, the provision is unreasonable. Id. at 15.

The clause is a carefully tailored provision that places subject matter jurisdiction with the Pennsylvania courts "over the Equipment." The clause does not preclude a lessee, or the lessor for that matter, from pursuing claims and a resolution of their disputes over issues other then "Equipment" in another jurisdiction. Moreover, the clause merely provides that the lessee "consents" to personal jurisdiction in Pennsylvania. It does not lay exclusive jurisdiction over all disputes involving the ERAs in Pennsylvania. Id. The choice of law/jurisdiction provision in the subject ERAs states, in pertinent part, as follows:

> Lesee consents to and agrees that personal jurisdiction over it and subject matter jurisdiction over the Equipment shall be proper in the Court of Common Pleas of and for Montgomery County, Pennsylvania and/or the United States District Court for the Eastern District of Pennsylvania, at Lessor's sole option . . . Notwithstanding the foregoing, nothing shall prohibit Lessor from electing to proceed against Lesee, the equipment or any guarantor in the jurisdiction where any one of them may be located.

Such a clause is unreasonable where it is shown that 1) it is the result of fraud or overreaching, 2) enforcement would violate a strong public policy of the forum, or 3)

enforcement would result in litigation in a jurisdiction that is so inconvenient as to be unreasonable.  Cancer Genetics, Inv. v. Kreatech Biotechnology, B.V., 2007 WL 4365328 at *2 (D.N.J. Dec. 11, 2007) (internal citations omitted).  Here, Plaintiffs assert that they can successfully argue for the unreasonableness of the forum selection clause.  Plaintiffs have expressed a preference for the New Jersey forum, 2) the fact that the case involves allegations of fraud by NorVergence, a necessary party to the lawsuit, 3) Plaintiffs reside in New Jersey, 4) the Debtor, NorVergence, is a New Jersey company, 5) the Trustee of Debtor's estate is located in New Jersey, 6) the alleged fraud occurred in New Jersey, and 7) it would be unjust to require Plaintiffs, at this stage of the proceeding, to begin their case anew in another jurisdiction.  Pl. Opp. Resp. at 17.

1) Fed. R. Civ. P. 56 Standard

In order to prevail on a motion for summary judgement, the movant must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322; Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001).  "A 'genuine' issue has been defined as "one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." J.P. Morgan Chase Bank v. Tamis (In re Tamis), CV. No. 05-CV-737, 2005 U.S. Dist. LEXIS 28120 at * 8 (D.N.J. Nov. 16, 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  In evaluating the existence of genuine issues, "all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party.  Id. (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Once the moving party has presented a proper motion for summary judgment, the burden shifts to the non-moving party to show the existence of a genuine dispute of material fact. Fed .R. Civ. P. 56(e); Anderson, 477 U.S. at 256; Fleming Companies v. Wholey & Co, Inc., (In re Fleming Companies), Case No. 03-10945, 2006 at *3 Bankr. LEXIS 896 (Bankr. D. Del. May 17, 2006).

2) **Legal Discussion**

a) ERA Floating Forum Selection Clause

-60-

As discussed earlier in this opinion, when a federal court is called upon to consider the effect of a contractual forum selection clause, federal common law governs. Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995). This is because questions concerning the enforceability of forum selection clauses are procedural in nature.  Id.

Under federal law "forum selection clauses . . . are prima facie valid and should be enforced unless enforcement is show by the resisting party to be 'unreasonable' under the circumstances." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  The burden of demonstrating that a forum selection clause is unreasonable falls on the party that is objecting to the enforcement of the clause.  Coastal Steel Corp. v. Tilghman Wheelbarator Ltd., 709 F.2d 190, 203 (3d Cir. 1983). To show that a forum selection clause is unreasonable, "a party objecting to the enforcement of a forum selection clause as 'unreasonable' must meet a strict standard of proof." In re Diaz Contracting, Inc., 817 F.2d 1047, 1051 (3d Cir. 1987) (citation omitted).  A forum selection clause is:

> presumptively valid and will be enforced by the forum unless the party objecting to its enforcement establishes (1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the [instant] forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

Coastal Steel, 709 F.2d at 202. In Hays v Merrill Lynch, the Third Circuit later clarified how a court should view concerns about delay and cost in the enforcement of a forum selection clause:

> [B]oth Coastal Steel and In re Diaz indicate that any bankruptcy-related concerns about delay and cost in the enforcement of a forum selection clause are not alone sufficient to overcome the policy favoring enforcement of such clauses...

Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1162 (3d Cir. Pa. 1989).  Therefore, while concerns about delay and/or costs of enforcement are relevant in the analysis, a court shall not deem a forum selection clause invalid on these grounds alone.

The first prong of the Coastal Steel test, which provides that a forum selection clause can be deemed unreasonable due to fraud or overreaching, applies only to cases where the forum selection clause itself has been included in the contract as a result of fraud.  Scherk v. Alberto-Culver Co., 417 U.S. 506, 519, n.14 (1974).

> This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud... the clause is unenforceable.  Rather, it means that [a]... forum selection clause in a contract is not enforceable if the

inclusion of that clause in the contract was the product of fraud or coercion.
Id., (citations omitted).  Similarly, a forum selection clause in unreasonable due to overreaching,
only when, in the inclusion of the forum selection clause in the contract, there has been "undue
influence or overweening bargaining power."  Bremen, 407 U.S. at 12.  The fact that a forum
selection clause was not open to negotiations, does not invalidate the clause due to overreaching.
Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1219 (3d Cir. 1991)(citations omitted).

The second prong of the Coastal Steel test, which analyzes whether a  forum selection
clause is unreasonable because it conflicts with the strong public policy of the forum, is dependent
on the state law of the forum.  Several of New Jersey's public policy considerations are relevant to
the enforcement of forum selection clauses.  First, New Jersey courts have found otherwise valid
forum selection clauses to be invalid when enforcement of the clause would conflict with a New
Jersey state statute.  See Kubis & Perszyk Assoc., Inc, v. Sun Microsystems, Inc., 146 N.J. 176,
195, 680 A.2d 618, 628 (1996) ("The general enforcement of forum-selection clauses in franchise
agreements would frustrate the legislative purpose, and substantially circumvent the public policy
under the [New Jersey] Franchise Act.").  Second, New Jersey has a "strong public policy of
resolving [an] entire controversy in one encompassing litigation.  McNeill v. Zoref, 297 N.J.
Super. 213, 222-223, 687 A.2d 1052, 106-1057 (App. Div. 1997).  The "entire controversy"
doctrine is founded on the general ideas of final, just and economic resolution of disputes that
comes from centralized dispute litigation.  Id. at 223, 687 A.2d 1057.  Finally, New Jersey courts
have evinced a strong policy toward having all forum selection clauses include adequate notice.  A
forum selection clause that does not provide a party with adequate notice may be considered
unreasonable and therefore invalid under New Jersey law.  Caspi v. Microsoft Network, LLC, 323
N.J. Super. 118, 126, 732 A.2d 532 (App. Div. 1999).  In Copelco Capital, the Court declined to
enforce a forum selection clause in which litigation was agreed to take place "in the state in which
our or our assignee's principal corporate offices are located," (a similar clause to the one at issue).
Copelco Capital, Inc., v. Shapiro, 331 N.J. Super 1, 4, 750 A. 2d 773, 775-776 (App. Div. 2000).
Because the contract was assigned after it was signed by the lessee, the clause was deemed
unenforceable for lack of adequate notice as to the specific jurisdiction where litigation would take
place. Id.  at 5.  Under New Jersey law, therefore, a floating forum selection clause may be
considered unreasonable because it is in violation of strong New Jersey public policy that forum

selection clauses give adequate notice as to the forum where litigation will occur. Id., (citing
Caspi, 323 N.J. Super. at 122, 732 A.2d at 530 (App. Div. 1999)).

The third prong of the Coastal Steel test, which analyzes the potential inconvenience to the
litigants, places a high burden of proof on the objecting party.  The party objecting to enforcement
must show that "trial in the contractual forum will be so *gravely inconvenient* that [it] will for all
practical purposes be deprived of [its] day in court."  Bremen, 407 U.S. at 18 (emphasis added).
Indeed in  Carnival Cruise Lines, Inc. v. Shute, the court determined that a forum selection clause
was enforceable even in the face of such grave inconvenience that one party could not litigate in
the forum because the forum was too remote.  Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 581,
(1991).  With the foregoing principles in mind, the forum selection clause at issue will be
considered.

With respect to the first prong of the Coastal Steel test, although the Plaintiffs in their
Complaint and opposition papers do make allegations of fraud on the part of  NorVergence, they
do not allege that the forum selection clause itself was included through fraud.  The general
allegation of fraud in connection with the contract is not sufficient to invalidate a forum selection
clause.  Scherk, 417 U.S. at 519, n.14.   Nor have the Plaintiffs have made allegations that the
forum selection clause was included in the ERA due to overreaching.  The Plaintiffs, however, do
state in their complaint that NorVergence "engaged in high pressure, misleading, and deceptive
sales tactics that resulted in significant confusion and misunderstanding ... with respect to the
nature of the services actually purchased... and the distinction between the NorVergence
agreement for telecommunications services and the ERA."  (Complaint p.8).  This, however, is not
sufficient to establish that the forum selection clause was agreed to as a matter of overreaching.
The Non-Excluded Plaintiffs are various small businesses and business guarantors and do not
appear to be unsophisticated consumers who would not understand the nature of the choice of law
clause.  Foster, 933 F.2d at 1219.  Finally, the Plaintiffs allege that "NorVergence refused to
negotiate  any of the terms of either the ERA or the Norvergence telecommunication services
agreement." Complaint, ¶ 26.  Even assuming the truth of the allegation, the fact that a forum
selection clause was not open to negotiation does render the clause unreasonable.   Foster, 933
F.2d at 1219.

Turning to the second prong of the Coastal Steel analysis, this Court believes that the

-63-

instant forum selection clauses would likely violate New Jersey's public policy.  The main argument that the Plaintiffs make against enforceability of the forum selection clause is that the clause does not expressly specify a particular jurisdiction of enforcement.  The language merely provides that the Lesee "consents" to personal jurisdiction over it in Pennsylvania and subject matter jurisdiction "over the Equipment" in Pennsylvania.  Defendant asserts the scope of the forum selection clause encompasses all types of disputes, including the instant dispute.  Plaintiffs, on the other hand, contend the language clearly reaches only disputes over equipment and lays jurisdiction in Pennsylvania at the sole option of the Lessor, that it does not provide that Pennsylvania has exclusive jurisdiction over all disputes involving the ERAs.  The two differing interpretations of the clause evidence the ambiguity and render the clause unenforceable for a lack of notice on the part of Plaintiffs that litigation would only be possible in Pennsylvania.  This type of language found in the forum selection clause is contrary to the general purpose of forum selection clauses "which is to ensure a predictable and expected locale for the resolution of the dispute."  Bremen, 407 U.S. at 15; Copelco, 331 N.J. Super at 6, 750 A. 2d at 776.  (a floating forum selection clause comes into direct conflict with the "doctrinal underpinnings" of securing in advance a specific forum of litigation that stands behind the general enforcement of forum selection clauses).

Enforcement of the forum selection clause in this case would also violate New Jersey's policy of centralizing dispute resolution in a single forum.  Given that jurisdiction is in part based on the impact this litigation will have on the Debtor, and the numerous other similar lawsuits pending in this Court, judicial economy is favored by disregarding this forum selection clause.  Therefore,  paired with the other strong public policy reasons to litigate in New Jersey, this court chooses to follow the reasoning and ruling laid out in Copelco.

Having determined that the forum selection clause at issue is invalid because it violates the public policies of the instant forum,[19] it is unnecessary to continue on to the third Coastal Steel factor.  The forum selection clause contained in the Credential ERAs shall not be enforced.

---

[19] The forum selection clause here is declared invalid on grounds in addition to "bankruptcy related concerns about delay and cost in the enforcement, ..." which alone are insufficient to invalidate a forum selection clause.  See Hays, 885 F 2d at 1162.

b) Choice of Law Clause

The same clause bearing on the forum selection also contains a choice of law provision.  The choice of law provision reads:

> The validity, interpretation, enforcement and effect of this Lease and all related transactions shall be subject to and governed by the laws of the Commonwealth of Pennsylvania.

Schwab Aff., Ex. A.  Since this choice of law provision stands in sharp contrast to those found in the other ERAs discussed above and does not mention assignments and office locations of potential assignees, it could be argued that, at least on its face, this choice of law clause is unambiguous and provides adequate notice to Plaintiffs of Pennsylvania law guiding the adjudication of this case.

Plaintiffs believe the choice of law to be ineffective due to the fraud in the inducement and/or NorVergence's misconduct leading up to the contact formation.  With respect to Plaintiff's fraud in the inducement allegation,

> [c]ase law distinguishes between two types of choice of law clauses, broad choice of law clauses and narrow choice of law clauses.  Choice of law clauses that use the language "governed and construed by," ... are considered to be broad capturing both contract and tort claims, particularly tort claims that relate to the contract.  See Sullivan v. Sovereign Bancorp, Inc., 33 Fed. Appx. 640, 642 (3d Cir. 2002); Core States Bank v. Signet Bank, 1996 U.S. Dist. LEXIS 12673, 1996 WL 482909 at *5, n.3 (E.D. Pa. 1996).  By contrast, choice of law clauses that use narrower language such as "construed under" are sometimes limited to contract claims and generally do not apply to tort claims that arise independent of the contract.

> The Third Circuit in Core States Bank explained that the phrase "governed by, and construed in accordance with" envisions claims other than those sounding in contract law." 1996 Dist. LEXIS 12673, 1996 WL 482909 at *5 no. 3.  The same interpretative principles mandate the application of New Jersey law in this case.  Just as in Core States Bank, the Court is here presented with a broad choice of law clause.

Pro and Davis Landscape, LTD. v. Hertz Equipment Rental Corp., 2008 U.S. Dist. LEXIS 100181 at *14-15 (D.N.J. Dec. 11, 2008).  As Plaintiffs accuse NorVergence of having committed a tort prior to the contract execution between Primary and NorVergence's customers/ Plaintiffs, the language of the choice of law provision above becomes critical.  The Court at this time declines to rule on the choice of law provision for the reasons set forth below.

-65-

A problem with the record before the Court is that the documentation attached to the Lewin and Marshall affidavits as well as the Schwab Affidavit submitted by Credential, includes the executed ERAs between Primary and the Plaintiffs. The documentation supplied to the court involves an ERA with a forum selection and choice of law clause that may differ from the documents reflecting the assignments between NorVergence and Primary. Because the Plaintiffs have not provided a copy of any lease assignment between NorVergence and Primary, the Court is not able to assess the effectiveness of all such forum selection and choice of law clauses. Such determination shall await the completion of discovery here and remain an issue to be finally determined at trial.

The Lewin affidavit and the Marshall affidavit, which were as attached to Plaintiffs' opposition papers, detail NorVergence's solicitation activities targeting the Plaintiffs in New Jersey. Defendant does not appear to dispute the content of these affidavits and does not contest Plaintiff's claim that the equipment subject of the ERA is located in New Jersey. Lastly, NorVergence, was a New Jersey corporation conducting business within this state and others. Although Defendant Credential is a Pennsylvania corporation, there is not sufficient information about the extent and nature of the contacts between Credential and Plaintiffs. There is not adequate information available to complete the choice of law analysis with respect to Credential.

For purposes of enabling the Court to properly determine the applicable choice of law and assure itself that due process is served by utilizing the correct state law to adjudicate Plaintiff's claims, Plaintiffs are instructed within forty-five (45) days of the date of this Opinion to amend the Second Amended Complaint in this Adversary Proceeding, and others where indirect assignments are believed to have taken place, to provide the necessary complete documentation regarding these transactions.

### c) Lack of Assignment Documentation

Now that the Court has analyzed the ERA's forum selection and choice of law clause, the lack of assignment documentation must be considered. As noted during the June 2, 2009 hearing, the Court entertained and denied a prior summary judgment motion filed by Defendant in 2006. Now as it did then, Defendant seeks summary judgment on the grounds that it did not take assignment of its interest in the Plaintiff's leases with NorVergence from NorVergence directly,

-66-

and has never conducted any business with NorVergence.  Credential also emphasizes that the Plaintiffs have failed to demonstrate evidence contradicting Defendant's factual assertions. Plaintiffs respond by pointing to the Lewin and Marshall affidavits which indicate Credential Leasing sent the two Plaintiffs and personal guarantors of the leases letters informing them of the assignment of their respective ERA's from Primary to Credential.  See Lewin Aff. ¶ 22; Marshall Aff., ¶26.

Since this Court's June 29, 2006 opinion already analyzed the situation in detail, the Court will incorporate the relevant portions of the opinion herein.  For the purposes of deciding the summary motion presently before the Court, the Court finds that the Lewin, Marshall and Schwab affidavits continue to raise a genuine issue of material fact exists with respect to whether Credential should be afforded the protection and benefits of holders in due course status.  In light of this, Plaintiffs are entitled to conduct discovery regarding the nature and legal effect of the agreements and contacts between NorVergence, Primary, Credential and Plaintiffs themselves. Defendant's summary judgment motion must fail.  In light of the foregoing, Credential's motion for summary judgement is denied.


## CONCLUSION

For the reasons set forth herein, Defendants' motions to dismiss Count IV, Count V, Count VI and Count VII of the respective Amended Complaints and/or Second Amended Complaints are Denied.  The dismissal of the claims filed by newly added Plaintiffs is Denied.  Plaintiffs' motion for nunc pro tunc relief to allow the newly added Plaintiffs to remain in the proceedings, as made during the June 2, 2009 hearing, is Granted.  The dismissal of the claims of Plaintiffs who have settled with Defendants is denied.  The parties are instructed to work together to file any appropriate stipulations of dismissal.

Defendant Credential's summary judgment motion in Adv. Proc. No. 04-2944 is Denied. Plaintiffs are directed within forty-five (45) days of the date of the Opinion to amend the operative Complaints by providing the necessary information to complete the choice of law analysis as set forth in this Opinion.  As to the claims against PCI in Adv. Proc. No. 04-2974, Plaintiffs are directed within forty-five (45) days of the date of this Opinion to seek in the Receivership action

leave of the Ohio State Court to proceed with the action here. PCI's motion to dismiss the amended complaint on this basis is held in abeyance until the Ohio Court rules on the motion.[20]

An Order shall be submitted in accordance with this Opinion.

Dated: February 24, 2010

ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE

---

[20]As a general matter, Plaintiffs, by their own admission, have not provided copies of ERA's and their assignments connecting all of the Plaintiffs with Defendants in the Adversary Proceedings even though Plaintiffs claim to have them. In the opinion of the Court, a dismissal of the Complaint for a failure to state a claim due to the absence of assignment documents is premature. The Court will be better able to evaluate the sufficiency of the evidence of assignments at the end of the discovery phase.